476 So.2d 896 (1985)
Fredrick DUNCAN, Plaintiff-Appellant,
v.
Rosa Nabors GORDON, Defendant-Appellee.
No. 17193-CA.
Court of Appeal of Louisiana, Second Circuit.
September 25, 1985.
William E. Armstrong, Monroe, for plaintiff-appellant.
Sharp & Sharp, by James Sharp, Jr., Monroe, for defendant-appellee.
Before JASPER E. JONES, FRED W. JONES, Jr. and SEXTON, JJ.
SEXTON, Judge.
Plaintiff appeals a trial court judgment rejecting his demands in a suit to rescind a written fifty percent contingency fee contract entered into with the defendant. Finding merit in plaintiff's contention that the defendant engaged in the unauthorized practice of law, we reverse.
The record reveals that on June 1, 1984, plaintiff, who was then 19 years old, was a passenger in an automobile driven by Patrick Nabors and owned by Emmit Nabors. The evidence shows that the abovementioned vehicle was on Winnsboro Road in Monroe, Louisiana making a left turn when it was struck in the rear by a vehicle driven by Billy Cage and owned by Israel Cage. Plaintiff suffered injuries to his back as a result of this accident.
*897 Plaintiff and Patrick Nabors were good friends, and the defendant, Rosa Nabors Gordon, was Patrick Nabors' sister. By virtue of this relationship, defendant had knowledge of the accident on the day of its occurrence. On that day she advised the plaintiff, Patrick, and Yolanda Pollard, the other occupant in the Nabors' vehicle to go see a doctor the next day to determine whether or not they were injured. That evening plaintiff and defendant agreed that the defendant would represent plaintiff in trying to obtain a settlement from Cage's insurer for the personal injuries which plaintiff suffered. The next day the defendant took the plaintiff to St. Francis Hospital to be examined.
On September 17, 1984, a written fifty percent contingency fee contract was executed and signed by the plaintiff and the defendant. The contract stated that defendant would represent plaintiff in negotiating a possible settlement with Cage's insurer for the injuries which plaintiff suffered in the June 1, 1984 automobile accident. In return for her services, defendant would receive fifty percent of any settlement received from the insurance company. At all times pertinent to this litigation, defendant was the owner of a construction company and not licensed to practice law.
Pursuant to this contract, defendant selected a doctor for plaintiff and she and her father drove plaintiff to this doctor on every appointment plaintiff had, except for one occasion when plaintiff walked to the doctor. The defendant contacted Marty Thompson, the insurance adjuster, on nine different occasions to conduct settlement negotiations on behalf of plaintiff. The insurance adjuster was under the mistaken belief that the defendant was conducting such negotiations because she was a relative of the plaintiff.
The negotiations between the defendant and the insurance adjuster resulted in plaintiff's claim ultimately being settled for $3,000. Upon receiving the settlement draft, defendant obtained plaintiff's endorsement thereon and deposited that draft into her construction company's account. After the draft cleared, defendant gave plaintiff $1,500 from which defendant deducted $100 for gas expenses resulting from transporting plaintiff to and from the doctor's office. Out of his portion of the settlement, plaintiff also paid $795.50 in medical expenses, leaving plaintiff with the sum of $604.50 out of the $3,000 settlement.
Plaintiff, being disgruntled with this disbursement, then filed the present suit seeking to have the contingency fee contract declared invalid on the basis that the contract was illegal and against the public policy of this state because the services rendered by the defendant constituted the unauthorized practice of law.
Subsequent to trial, the trial court rejected the plaintiff's demands and ruled in favor of the defendant. The court held that the contract was valid and did not constitute the unauthorized practice of law because at no time did the defendant ever hold herself out as an attorney at law. The trial court reasoned that the purpose of the statute precluding the unauthorized practice of law was to prevent persons who were not attorneys from holding themselves out as such.
Plaintiff initially contends on appeal that the trial court erred in holding that defendant was not engaged in the unauthorized practice of law, and therefore the contingency contract was illegal and against the public policy of this state.
It is unlawful for a natural person who has not been first duly and regularly licensed and admitted to practice law by the Supreme Court of this state, to engage in the practice of law in this state. LSA-R.S. 37:213. Any contracts made by a non-lawyer to render services in violation of this provision are for an unlawful cause. Consequently, they are against public policy and absolutely null. LSA-C.C. Arts. 1893, 1895.[*]Succession of Humes, 467 So.2d 25 (La.App. 1st Cir.1985); Andrus v. *898 Guillot, 160 So.2d 804 (La.App. 3d Cir. 1964); Meunier v. Bernich, 170 So. 567 (Orl.App.1936).
It is not disputed that the defendant is not licensed to practice law in Louisiana. Therefore, the issue to be resolved in this case is whether the services performed by the defendant pursuant to the contingency fee contract, i.e., representing plaintiff in his personal injury claim against Billy Cage, constitute the practice of law. If the services performed by defendant under the contract constitute the practice of law, then the contract between plaintiff and defendant is an absolute nullity because it is in contravention of LSA-R.S. 37:213.
The practice of law is defined in LSA-R.S. 37:212, as follows:
§ 212. "Practice of law" defined
A. The practice of law means and includes:
(1) In a representative capacity, the appearance as an advocate, or the drawing of papers, pleadings or documents, or the performance of any act in connection with pending or prospective proceedings before any court of record in this state; or
(2) For a consideration, reward, or pecuniary benefit, present or anticipated, direct or indirect;
(a) The advising or counseling of another as to secular law;
(b) In behalf of another, the drawing or procuring, or the assisting in the drawing or procuring of a paper, document, or instrument affecting or relating to secular rights;
(c) The doing of any act, in behalf of another, tending to obtain or secure for the other the prevention or the redress of a wrong or the enforcement or establishment of a right; or
(d) Certifying or giving opinions as to title to immovable property or any interest therein or as to the rank or priority or validity of a lien, privilege or mortgage as well as the preparation of acts of sale, mortgages, credit sales or any acts or other documents passing titles to or encumbering immovable property.
B. Nothing in this Section prohibits any person from attending to and caring for his own business, claims, or demands; or from preparing abstracts of title; or from insuring titles to property, movable or immovable, or an interest therein, or a privilege and encumbrance thereon, but every title insurance contract relating to immovable property must be based upon the certification or opinion of a licensed Louisiana attorney authorized to engage in the practice of law. Nothing in this Section prohibits any person from performing, as a notary public, any act necessary or incidental to the exercise of the powers and functions of the office of notary public, as those powers are delineated in Louisiana Revised Statutes of 1950, Title 35, Section 1, et seq.
C. Nothing in this Section shall prohibit any partnership, corporation, or other legal entity from asserting any claim, not exceeding twelve hundred dollars, or defense pertaining to an open account or promissory note, or suit for eviction of tenants on its own behalf in the courts of limited jurisdiction on its own behalf through a duly authorized partner, shareholder, officer, employee, or duly authorized agent or representative. No partnership, corporation, or other entity may assert any claim on behalf of another entity or any claim assigned to it.
The practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer. The essence of the professional judgment of the lawyer is his educated ability to relate the general body and philosophy of law to a specific legal problem of a client. Model Code of Professional Responsibility, EC3-5 (1982).
Pursuant to the contract, defendant selected and took the plaintiff to the doctor who treated him and to the hospital; she conducted all negotiations with the insurance adjuster regarding the settlement of plaintiff's claim; she picked up the settlement draft and deposited it into her company's account; and she retained fifty percent of the plaintiff's settlement funds. In short, defendant, in return for compensation, *899 took all of the necessary steps in order for the plaintiff to obtain redress for the personal injuries he suffered.
Thus, in the performance of her contract, defendant had to advise plaintiff concerning the redress of a legal wrong. Defendant was not qualified to give this advice because she did not possess the legal training required by the Supreme Court of this state. By contracting to represent plaintiff in negotiating a settlement with the insurance company, defendant attempted to function as and perform the duties of a duly licensed attorney.
The only Louisiana case we have been able to locate directly dealing with the settling and adjusting of a personal injury claim by one who is not an attorney is the 1936 Orleans Appeals case of Meunier v. Bernich, supra. We agree with the Meunier court that such actions constitute the practice of law and likewise hold that by representing plaintiff in the negotiation and settlement of his personal injury claim for consideration pursuant to the contingency fee contract, Rosa Gordon engaged in the practice of law as defined by LSA-R.S. 37:212. Since the defendant was not authorized to practice law in this state, the contingency fee contract authorizing her to perform these services was in violation of LSA-R.S. 37:213. As such, the contingency fee contract between plaintiff and defendant is an absolute nullity.
The trial court, in its reasons for judgment, stated that the purpose of LSA-R.S. 37:213 was to prevent persons who are not lawyers from holding themselves out to the public as lawyers. While this statement by the trial court is correct, there is another equally important evil the statute was designed to prevent. That evil is to prevent laymen from rendering services to the public which only lawyers are qualified to render. It is only by preventing such conduct that the general public will be protected from laymen dabbling into areas in which they are incompetent. Thus, the fact that at no time did defendant ever hold herself out to be a lawyer does not mean that she did not engage in the unauthorized practice of law. The defendant rendered services which she was not competent to give, one of the evils the statute was designed to prevent. Therefore, this statute is applicable to the defendant's conduct.
In light of the ruling on plaintiff's first contention of error, it becomes unnecessary to discuss plaintiff's second contention that the fee was excessive. Also, appellant makes no issue before us of certain items of damages sought in the trial court and these are therefore not considered by us.
Thus, finding merit in plaintiff's initial contention, the judgment of the trial court is hereby reversed and we will render appropriate judgment in favor of the plaintiff. There should be judgment in favor of the plaintiff for the fifty percent fee charged by the defendant, $1,500, and for the $100 expenses deducted in furtherance of this illegal contract.
Accordingly, it is hereby ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Fredrick Duncan, and against the defendant, Rosa Nabors Gordon, in the full sum of $1,600, together with legal interest from judicial demand, and for all costs of this litigation.
REVERSED AND RENDERED.
NOTES
[*] Act No. 331 of 1984 revised the Obligations articles of the Civil Code and Articles 1893 and 1895 are now designated as Articles 1966 and 1968, respectively.