672 So.2d 356 (1996)
FALCO LIME, INC. and Live Oak Landscapes
v.
PLAQUEMINE CONTRACTING CO., INC. and the Travelers Indemnity Company.
No. 95 CA 1784.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
*357 Gregory E. Bodin, Baton Rouge, for Plaintiff/Appellant, Live Oak Landscapes.
G. Allen Walsh, Emmett E. Batson, Baton Rouge, for Defendants/Appellees, Plaquemine Contracting Company, Inc. and The Travelers Indemnity Company.
Before CARTER, PITCHER and CRAIN,[1] JJ.
CARTER, Judge.
This is an appeal from a trial court judgment, sustaining a peremptory exception pleading the objection of no right of action.

BACKGROUND
Prior to October 24, 1986, Plaquemine Contracting Company, Inc. (Plaquemine) entered into a contract with the Army Corps of Engineers of Fort Polk, Louisiana, to perform certain work in the erection of a storage building.
On October 24, 1986, Plaquemine entered into a sub-contract with Live Oak Landscapes (Live Oak), in which Live Oak agreed to furnish certain materials and perform labor for Plaquemine in association with the Fort Polk project. The sub-contract between Plaquemine and Live Oak was secured by a performance bond issued to Plaquemine by the Travelers Indemnity Company (Travelers).
On May 31, 1988, Live Oak entered into a sub-contract with Falco Lime, Inc. (Falco). Under the terms and conditions of the sub-contract, Falco agreed to furnish 1,500 tons of hydrated lime to the Fort Polk project site.
On November 1, 1988, Falco filed a complaint in the Circuit Court of Warren County, Mississippi, against Live Oak for the unpaid balance due under the contract between Live Oak and Falco. On December 7, 1988, a default judgment was entered in favor of Falco and against Live Oak. On February 3, 1989, in satisfaction of the default judgment, Live Oak and Falco entered into an "Authentic Act of Assignment," which provided that Live Oak conveyed, transferred, assigned, set over, and delivered with "full substitution and subrogation in and to all the rights and actions of warranty to the extent provided for hereinbelow which they have or may have against Plaquemine Contracting Company, Inc., ... unto Falco Lime, Inc., ... all and singular the following described property." The act described the rights so transferred as:

*358 [A]ccounts receivable and/or payments due associated with the sub-contract agreement dated the 24th day of October, 1986, between Plaquemine Contracting Company, Inc. and Live Oak Landscapes in the form of a sub-contract agreement in association with a contract which Plaquemine Contracting Company, Inc. had previously entered into with the Army Corps of Engineers of Fort Polk, Louisiana, to perform certain labor and furnish certain materials for the erection and completion of projection (sic) number DACA 63-87-C-00055CO. Amend and storage building which contain a sub-contract agreement price of approximately $69,000.00, attached hereto and made a part hereof as Exhibit 1.
The act of assignment also provided as follows:
Notwithstanding anything to the contrary herein, Live Oak Landscapes assigns under the above described contract a sum not to exceed $32,457.58 plus interest as set forth hereinabove, of any funds recovered from Plaquemine Contracting Company, Inc., or any other company or entity obligated to Live Oak Landscapes under the above referenced contract. Any funds collected over and above said amount shall be paid to Live Oak Landscapes including any and all interest and penalties which may be recovered against Plaquemine Contracting Company, Travelers Insurance Company or any other company or entity.
Falco Lime, Inc. does hereby agree to authorize and does hereby authorize its attorneys ... to disburse to Live Oak Landscapes any and all funds in excess of the amount set forth hereinabove it receives from Plaquemine Contracting Company, Inc., or any other company or entity for payment under the above contract, other than any attorney's fees that may be awarded by the court in pursuing said claim.
Subsequently, Plaquemine breached its contract with Live Oak by refusing to pay the amount due under the contract. Thereafter, Falco informed Plaquemine that Live Oak had assigned to Falco all of Live Oak's proceeds arising from the contract between Live Oak and Plaquemine. When Falco requested payment from Plaquemine, Plaquemine asserted rights of setoff for expenses which it had incurred in completing the work left unfinished by Live Oak under the terms of the contract, and Plaquemine refused to pay Falco the requested funds.

FACTS
On July 31, 1989, Falco and Live Oak filed the instant action for damages for breach of contract against Plaquemine and Travelers, requesting payment of the balance owed to Live Oak, which had been assigned to Falco, as well as interest from the date of judicial demand, reasonable attorney's fees, and costs.
On September 8, 1989, Plaquemine filed a petition for removal of the action from state to federal court, contending that the action was one arising under the Miller Act, 40 U.S.C. § 270(b), and that the federal court had jurisdiction over the action. According to the petition for removal, the claims of Falco and Live Oak relate to services and/or materials allegedly supplied to Plaquemine in connection with a federal construction project at Fort Polk, Louisiana, where Plaquemine was its Miller Act surety.
Apparently, during the pendency of the federal court action, a settlement agreement was reached between Plaquemine and the attorney representing Falco and Live Oak, whereby Plaquemine agreed to pay the amount of $28,000.00.[2] A joint motion for dismissal was signed and filed with the federal court, dismissing with prejudice Falco's claim against Plaquemine and Travelers. As a result of the dismissal, the claim of Falco against Plaquemine was resolved, and the *359 only remaining claim was that of Live Oak against Plaquemine. On June 26, 1991, the matter was remanded to state court.
On October 28, 1994, Plaquemine and Travelers filed peremptory exceptions pleading the objections of no right of action and res judicata.[3] In their objection of no right of action, Plaquemine and Travelers contended that Live Oak had assigned to Falco all of its rights under the contract with Plaquemine and that Live Oak, therefore, had no right of action against Plaquemine and Travelers. On February 23, 1995, the trial court signed a judgment, sustaining the exception pleading the objection of no right of action and dismissed, with prejudice, Live Oak's action against Plaquemine and Travelers. In written reasons for judgment, the trial court stated that, in the "Authentic Act of Assignment," Live Oak conveyed to Falco all rights of action held by Live Oak against Plaquemine which arose out of the October 24, 1986, sub-contract between Live Oak and Plaquemine. The trial court found that the assignment was not a limited assignment of rights up to $32,457.58 as argued by Live Oak. Rather, the trial court determined that the assignment provided that any amount collected by Falco from Plaquemine in excess of $32,457.58 was to be remitted to Live Oak, and if no amount was collected in excess of $32,457.58, Live Oak was due nothing.
Live Oak appealed from the trial court judgment, assigning the following specification of error:
As a matter of law, the trial court erroneously interpreted the relevant provisions of the assignment in finding a full, rather than a partial, assignment of Live Oak's rights, thereby leading the trial court to erroneously sustain the exception of no right of action. Since there was not a full assignment of rights, the exception of no right of action should have been overruled, and Live Oak's claim should not have been dismissed.

NO RIGHT OF ACTION
The peremptory exception pleading the objection of no right of action tests whether the plaintiff has any interest in judicially enforcing the right asserted. LSA-C.C.P. art. 927(5); Jones v. McDonald's Corporation, 618 So.2d 992, 995 (La.App. 1st Cir.1993); Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 597 So.2d 1155, 1157 (La.App. 1st Cir.1992). The essential function of the objection is to provide a threshold device which terminates suits brought by one who has no interest in enforcing judicially the right asserted. Jones v. McDonald's Corporation, 618 So.2d at 995. Simply stated, the exception pleading the objection of no right of action tests whether this particular plaintiff, as a matter of law, has an interest in the claim sued on. Jones v. McDonald's Corporation, 618 So.2d at 995; Mercier v. Flugence, 408 So.2d 52, 53 (La. App. 3rd Cir.1981).
Evidence supporting or controverting an objection of no right of action is admissible, but objections of no right of action cannot be used simply because there may be a valid defense to the proceeding. Bank of New Roads v. Livonia South, Inc., 527 So.2d 1132, 1135 (La.App. 1st Cir.), writ denied, 532 So.2d 150 (La.1988). Generally, a party raising a peremptory exception bears the burden of proof. See Spott v. Otis Elevator Company, 601 So.2d 1355, 1361 (La.1992). To prevail on a peremptory exception pleading the objection of no right of action, the defendant must show that the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit. Jones v. McDonald's Corporation, 618 So.2d at 995; Moyers v. Altmann, 594 So.2d 6, 8 (La.App. 3rd Cir.1992).
In the instant case, in their peremptory exception pleading the objection of no right of action, Plaquemine and Travelers contended that Live Oak's assignment to Falco of all of its rights under its contract with Plaquemine precluded Live Oak's right to sue *360 Plaquemine to recover monies under the contract.
In opposition to the exception, Live Oak claimed that its assignment to Falco was not a "blanket pledge" of assignment, but was only a partial assignment. Live Oak reasoned that, at the time that it executed the assignment to Falco, the parties contemplated that Plaquemine owed to Live Oak an amount in excess of $32,457.58. Therefore, Live Oak contended that it assigned to Falco only $32,457.58 of its claim and that it still had a right to recover from Plaquemine the unassigned portion of the claim. Accordingly, Live Oak argued that it had a right of action against Plaquemine for those monies.

INTERPRETATION OF THE "AUTHENTIC ACT OF ASSIGNMENT"
Assignability of rights is addressed in LSA-C.C. art. 2642, which provides as follows: "All rights may be assigned, with the exception of those pertaining to obligations that are strictly personal. The assignee is subrogated to the rights of the assignor against the debtor."
An authentic act constitutes full proof of the agreement it contains, as against the parties, their heirs, and successors by universal or particular title. LSA-C.C. art. 1835.
Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 p. 16 (La.App. 1st Cir. 3/11/94); 634 So.2d 466, 479, writ denied, 94-0906 (La. 6/17/94); 638 So.2d 1094; Spohrer v. Spohrer, 610 So.2d 849, 851-52 (La.App. 1st Cir.1992). In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. LSA-C.C. art. 2045; Martin Exploration Company v. Amoco Production Company, 93-0349 p. 4 (La.App. 1st Cir. 5/20/94); 637 So.2d 1202, 1205, writ denied, 94-2003 (La. 11/4/94); 644 So.2d 1048; Spohrer v. Spohrer, 610 So.2d at 852. This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. LSA-C.C. art. 2046; Woodrow Wilson Construction Company, Inc. v. MMR-Radon Constructors, Inc., 93-2346 p. 3 (La.App. 1st Cir. 4/8/94); 635 So.2d 758, 759, writ denied, 94-1206 (La. 7/1/94); 639 So.2d 1167; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479. Each provision in an agreement must be interpreted in light of the other provisions so that each is given the meaning suggested by the agreement as a whole. LSA-C.C. art. 2050.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479; Stafford v. Jennings-Norwood Farm and Irrigation Company, Inc., 586 So.2d 735, 737 (La.App. 3rd Cir.1991), writ denied, 590 So.2d 590 (La.1992); Investors Associates Ltd. v. B.F. Trappey's Sons Inc., 500 So.2d 909, 912 (La. App. 3rd Cir.), writ denied, 502 So.2d 116 (La.1987).
When appellate review is not premised upon any factual findings made at the trial level, but instead is based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. Conoco, Inc. v. Tenneco, Inc., Tennessee Gas Pipeline Company, 524 So.2d 1305, 1312 (La.App. 3rd Cir.), writ denied, 525 So.2d 1048 (La.1988). In such cases, appellate review of questions of law is simply whether the trial court was legally correct. Spohrer v. Spohrer, 610 So.2d at 853.
In the instant case, on February 3, 1989, Live Oak and Falco entered into an "Authentic Act of Assignment," which provided that Live Oak transferred to Falco any rights and actions which it had against Plaquemine. The assignment described the rights transferred as the "accounts receivable and/or payments due associated with the sub-contract agreement dated the 24th day of October, 1986, between Plaquemine Contracting Company, Inc. and Live Oak Landscapes in the form of a sub-contract agreement in association with a contract *361 which Plaquemine Contracting Company, Inc. had previously entered into with the Army Corps of Engineers of Fort Polk, Louisiana." The act of assignment also provided as follows:
Notwithstanding anything to the contrary herein, Live Oak Landscapes assigns under the above described contract a sum not to exceed $32,457.58 plus interest as set forth hereinabove, of any funds recovered from Plaquemine Contracting Company, Inc., or any other company or entity obligated to Live Oak Landscapes under the above referenced contract. Any funds collected over and above said amount shall be paid to Live Oak Landscapes including any and all interest and penalties which may be recovered against Plaquemine Contracting Company, Travelers Insurance Company or any other company or entity.

Falco Lime, Inc. does hereby agree to authorize and does hereby authorize its attorneys... to disburse to Live Oak Landscapes any and all funds in excess of the amount set forth hereinabove it receives from Plaquemine Contracting Company, Inc., or any other company or entity for payment under the above contract, other than any attorney's fees that may be awarded by the court in pursuing said claim. (emphasis added)
We have thoroughly reviewed the "Authentic Act of Assignment" and conclude that the trial court was legally correct in its interpretation of the agreement. In the assignment, Live Oak clearly assigned to Falco all of its "rights, accounts receivable and/or payments due" associated with the October 24, 1986, contract between Plaquemine and Live Oak. According to the agreement, in the event that Falco recovered from Plaquemine or Travelers an amount greater than $32,457.58, Falco was required to remit to Live Oak the excess amount. Live Oak, however, did not retain any rights directly against Plaquemine.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, sustaining Plaquemine's and Travelers' peremptory exception pleading the objection of no right of action and dismissing Live Oak's suit, is affirmed. Costs of this appeal are assessed against Live Oak.
AFFIRMED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] Although the record does not contain a copy of the settlement agreement or subsequent dismissal, both parties, in memoranda in the record, as well as in brief, agree that this occurred. According to a memorandum in the record, copies of the federal court pleadings were not sent to the state court when the matter was remanded. The memorandum notes that counsel for Live Oak was unable to secure a copy of the dismissal in federal court, as the record had already been archived in Dallas, Texas, and could not be obtained in time for the hearing on the exceptions.
[3] In the exception pleading the objection of res judicata, Plaquemine and Travelers contended that the matter had been previously dismissed in the federal court. The trial court did not reach the issue of res judicata because of its ruling on the exception pleading the objection of no right of action. Therefore, the issue of res judicata is not before us on appeal.