680 So.2d 735 (1996)
ALCO COLLECTIONS, INC.
v.
Dixie V. POIRIER.
No. 95 CW 2582.
Court of Appeal of Louisiana, First Circuit.
September 27, 1996.
*737 Garth J. Ridge, Baton Rouge, for Defendant/Relator, Dixie V. Poirier.
Charles E. Daspit, Baton Rouge, for Plaintiff/Respondent, Alco Collections, Inc.
Before CARTER, PARRO and McDONALD,[1] JJ.
CARTER, Judge.
The issue presented in this writ application is whether a licensed collection agency may file a suit, in its own name, on a debt allegedly assigned to it on a contingency fee basis or whether such action constitutes the unauthorized practice of law.

BACKGROUND
In July, 1993, defendant, Dixie V. Poirier, executed a lease for an apartment in the Savoy Plaza Apartments in Baton Rouge, Louisiana. Poirier allegedly defaulted on her lease and owed the Savoy Plaza Apartments monthly rent of $535.00 for the months of November, 1993, through January, 1994, for a total of $1,605.00. In addition, Poirier allegedly owed the Savoy Plaza Apartments late fees of $50.00.
On February 8, 1994, the Savoy Plaza Apartments executed an instrument entitled "Assignment," wherein the Savoy Plaza Apartments allegedly assigned to Alco Collections, Inc. (Alco), a licensed collection agency, the debt owed to it by Poirier. The assignment provided, in part, as follows:

SAVOY PLAZA APARTMENTS, (hereinafter "Client"), hereby assigns unto Alco Collections, Inc. (hereinafter "Alco"), the following debt, presently owed to Client: DIXIE V. POIRER # 264

*738 As consideration for the above assignment, ALCO hereby agrees to make a good faith effort to collect this debt, including the filing of suit in the appropriate court of law in order to enforce that debt, and remit to client 50.00% of all sums collected through suit or otherwise on said debt.

FACTS
On February 17, 1994, Alco, through its president, James Allen, filed a statement of claim in the small claims division of the Baton Rouge City Court.[2] In its pleading, Alco alleged the Savoy Plaza Apartments assigned Alco the debt owed to it by Poirier.[3] Alco sought recovery of the $1,655.00 due from Poirier, together with legal interest from date of judicial demand and all costs of the proceedings.
Poirier answered Alco's petition, denying that she was in default on her lease with the Savoy Plaza Apartments and denying that the Savoy Plaza Apartments had validly assigned her account to Alco. In further answering Alco's petition, Poirier alleged that Alco's claim is void and against public policy in that the filing of the suit on the allegedly assigned claim by Alco constituted the unauthorized practice of law in violation of LSA-R.S. 37:212 A and C.
Poirier also requested that the matter be transferred from the small claims division to the regular docket of the Baton Rouge City Court. By order, dated March 24, 1994, the matter was transferred to the regular docket of the Baton Rouge City Court. Thereafter, Alco retained the services of an attorney to assume its representation in the proceedings.
In response to discovery requests, a copy of the alleged assignment was filed into the record. Poirier filed a peremptory exception pleading the objection of no right of action. In her exception, Poirier alleged that the Savoy Plaza Apartments assigned her account to Alco for a 50% contingency fee, that the assignment specifically authorized Alco to file suit on the debt allegedly owed by her, and that Alco, in turn, filed suit against her pursuant to that assignment. Poirier reasoned that the assignment is absolutely null in that it authorized Alco, a lay entity, to take legal action to collect her account for the Savoy Plaza Apartments.
After a hearing, on November 21, 1995, the city court judge denied Poirier's exception pleading the objection of no right of action.
From this adverse judgment, Poirier filed an application for supervisory writs with this court. By order, dated April 30, 1996, this court granted a writ of certiorari. The issue presented in this supervisory writ is whether the court erred in denying the exception pleading the objection of no right of action, thereby allowing a licensed collection agency to file a suit, in its own name, on a debt assigned to it on a contingency fee basis.

NO RIGHT OF ACTION
The peremptory exception pleading the objection of no right of action tests whether the plaintiff has any interest in judicially enforcing the right asserted. LSA-C.C.P. art. 927 A(5); Falco Lime, Inc. v. Plaquemine Contracting Co., Inc., 95-1784 p. 5 (La.App. 1st Cir. 4/4/96); 672 So.2d 356, 359; Jones v. McDonald's Corporation, 618 So.2d 992, 995 (La.App. 1st Cir.1993); Duplessis Cadillac, Inc. v. Creative Credit Services, Inc., 597 So.2d 1155, 1157 (La.App. 1st *739 Cir.1992). The essential function of the objection is to provide a threshold device which terminates suits brought by one who has no interest in enforcing judicially the right asserted. Falco Lime, Inc. v. Plaquemine Contracting Co., Inc., 672 So.2d at 359; Jones v. McDonald's Corporation, 618 So.2d at 995. Simply stated, the exception pleading the objection of no right of action tests whether this particular plaintiff, as a matter of law, has an interest in the claim sued on. Falco Lime, Inc. v. Plaquemine Contracting Co., Inc., 672 So.2d at 359; Jones v. McDonald's Corporation, 618 So.2d at 995; Mercier v. Flugence, 408 So.2d 52, 53 (La. App. 3rd Cir.1981).
Evidence supporting or controverting an objection of no right of action is admissible, but objections of no right of action cannot be used simply because there may be a valid defense to the proceeding. Bank of New Roads v. Livonia South, Inc., 527 So.2d 1132, 1135 (La.App. 1st Cir.), writ denied, 532 So.2d 150 (La.1988). Generally, a party raising a peremptory exception bears the burden of proof. See Spott v. Otis Elevator Company, 601 So.2d 1355, 1361 (La.1992). To prevail on a peremptory exception pleading the objection of no right of action, the defendant must show that the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit. Falco Lime, Inc. v. Plaquemine Contracting Co., Inc., 672 So.2d at 359; Jones v. McDonald's Corporation, 618 So.2d at 995; Moyers v. Altmann, 594 So.2d 6, 8 (La.App. 3rd Cir.1992).
In the instant case, in her peremptory exception pleading the objection of no right of action, Poirier alleged that the Savoy Plaza Apartments assigned her debt to Alco for a 50% contingency fee and that the assignment specifically authorized Alco to engage in the filing of a suit. Poirier contended that such assignment is absolutely null and void in that it authorizes a lay entity to take legal action to enforce a debt in violation of the prohibition against the unauthorized practice of law, citing Andrus v. Guillot, 160 So.2d 804 (La.App. 3rd Cir.1964).
In opposition to the exception, Alco contended that, although the Third Circuit Court of Appeal in Andrus interpreted LSA-R.S. 37:212 to prohibit a collection agency from suing a debtor on a debt which had been assigned to it by the original creditor on a contingency fee basis, that case is not binding in the instant case. Moreover, Alco reasoned that Andrus has been legislatively overruled by the enactment of the Collection Agency Regulation Act, LSA-R.S. 9:3576.1 et seq. Alco contended that LSA-R.S. 9:3576.19 clearly authorizes a licensed collection agency to take an assignment of a claim of its client and, pursuant to that assignment, to file suit to collect that claim for the client.
The city court judge denied Poirier's exception pleading the objection of no right of action, thereby authorizing Alco to proceed with the collection of the debt assigned to it by the Savoy Plaza Apartments.
In order to determine whether Alco has a right of action, we must examine the act of assignment to determine what rights, if any, were transferred to Alco by the Savoy Plaza Apartments.

INTERPRETATION OF THE ACT OF ASSIGNMENT
An assignment or transfer of credits is a species of sale. Shell Western E & P, Inc. v. Fluid Driers, Inc., 572 So.2d 323, 325 (La.App. 3rd Cir.1990), writ denied, 575 So.2d 823 (La.1991). The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself. LSA-C.C. art. 2439. A sale is perfect between the parties when they agree (consent) as to the thing sold and the price. LSA-C.C. art. 2439; Evans v. Graves Pontiac-Buick-GMC Truck, Inc., 576 So.2d 1025, 1028 (La. App. 1st Cir.), writ denied, 581 So.2d 687 (La.1991); DB Orban Company v. Lakco Pipe & Supply, Inc., 496 So.2d 1382, 1384 (La.App. 3rd Cir.1986). In a sale, it is essential that the price be fixed and determined between the parties, otherwise no sale exists. LSA-C.C. art. 2464; DB Orban Company v. Lakco Pipe & Supply, Inc., 496 So.2d at 1384.
Generally, legal agreements have the effect of law upon the parties, and, as *740 they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. Falco Lime, Inc. v. Plaquemine Contracting Co., Inc., 672 So.2d at 360; Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544 p. 16 (La.App. 1st Cir. 3/11/94); 634 So.2d 466, 479, writ denied, 94-0906 (La. 6/17/94); 638 So.2d 1094; Spohrer v. Spohrer, 610 So.2d 849, 851-52 (La.App. 1st Cir.1992). In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to true intent of the parties. LSA-C.C. art.2045; Falco Lime, Inc. v. Plaquemine Contracting Co., Inc., 672 So.2d at 360; Martin Exploration Company v. Amoco Production Company, 93-0349 p. 4 (La.App. 1st Cir. 5/20/94); 637 So.2d 1202, 1205, writ denied, 94-2003 (La. 11/4/94); 644 So.2d 1048; Spohrer v. Spohrer, 610 So.2d at 852. This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. LSA-C.C. art.2046; Woodrow Wilson Construction Company, Inc. v. MMR-Radon Constructors, Inc., 93-2346 p. 3 (La.App. 1st Cir. 4/8/94); 635 So.2d 758, 759, writ denied, 94-1206 (La. 7/1/94); 639 So.2d 1167; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479. Each provision in an agreement must be interpreted in light of the other provisions so that each is given the meaning suggested by the agreement as a whole. LSA-C.C. art.2050.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art. 2046; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479; Stafford v. Jennings-Norwood Farm and Irrigation Company, Inc., 586 So.2d 735, 737 (La.App. 3rd Cir. 1991), writ denied, 590 So.2d 590 (La.1992); Investors Associates Ltd. v. B.F. Trappey's Sons Inc., 500 So.2d 909, 912 (La.App. 3rd Cir.), writ denied, 502 So.2d 116 (La.1987).
When appellate review is not premised upon any factual findings made at the trial level, but instead is based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. Conoco, Inc. v. Tenneco, Inc., Tennessee Gas Pipeline Company, 524 So.2d 1305, 1312 (La.App. 3rd Cir.), writ denied, 525 So.2d 1048 (La.1988). In such cases, appellate review of questions of law is simply whether the trial court was legally correct. Spohrer v. Spohrer, 610 So.2d at 853.
In the instant case, on February 8, 1994, the Savoy Plaza Apartments and Alco executed a document entitled "Assignment,"[4] which provided as follows:

SAVOY PLAZA APARTMENTS, (hereinafter "Client"), hereby assigns unto Alco Collections, Inc. (hereinafter "Alco"), the following debt, presently owed to Client: DIXIE V. POIRER # 264
As consideration for the above assignment, ALCO hereby agrees to make a good faith effort to collect this debt, including the filing of suit in the appropriate court of law in order to enforce that debt, and remit to client 50.00% of all sums collected through suit or otherwise on said debt. ALCO further agrees to adhere to the Fair Debt Collection Practices Act and the laws of the State of Louisiana, and hold client harmless from any and all liabilities arising out of or in connection with ALCO's breach of the laws governing collection practices or terms of this agreement, and will indemnify client of any loss resulting from the breach.
Client hereby agrees to notify ALCO immediately if any payments on the above account are received in Client's office, and to the extent necessary, adhere to the Fair Debt Collection Practices Act and the laws of the State of Louisiana, and hold ALCO harmless from any and all liabilities arising out of or in connection with Client's breach of the laws governing collection practices or terms of this agreement and will indemnify ALCO for any loss resulting from the breach.
Additionally, the parties agree that ALCO shall pay all costs of collecting the above account, including but not limited to, filing fees, sheriff's fees, and the cost of certified mailings.

*741 In addition to transferring ownership of the above debt to ALCO, it is also the intent of Client hereby to transfer to ALCO all security rights which accompany that debt, including, but not limited to any lessor's privilege to which Client is entitled.
We have thoroughly reviewed the act of assignment. Initially, we note that there is no stated present monetary consideration for any transfer set forth in the agreement. Rather, it appears that the payment of consideration was contingent upon the success of Alco's collection efforts. The agreement clearly states that Alco would remit to the Savoy Plaza Apartments 50% of the amount Alco recovered in its collection efforts. If no funds were recovered by Alco, then no consideration would have been paid for the assignment. The law is clear that, in a sale, it is essential that the price be fixed. In the instant case, the act of assignment fails to provide for a price.
Additionally, although some of the language in the agreement purports to transfer the debt, the plain wording of the entire agreement does not manifest an intent to transfer ownership of Poirier's debt from the Savoy Plaza Apartments to Alco. In the agreement, Alco agreed to make a good faith effort to collect the debt, which included filing a suit against Poirier and remitting a portion of the proceeds to the Savoy Plaza Apartments. Moreover, the act of assignment referenced the Savoy Plaza Apartments as Alco's "client," which appellation is certainly inconsistent with the notion of a seller in a transfer of rights. In the agreement, Alco also agreed to abide by the laws regarding collection practices and to hold the Savoy Plaza Apartments harmless from any liability for any violations of fair collection practices. If the Savoy Plaza Apartments sold its rights in the debt to Alco, then the Savoy Plaza Apartments would have no liability for any fault or negligence in Alco's collection efforts. Additionally, the Savoy Plaza Apartments agreed to notify Alco of any payments received from the debtor. While this provision is consistent with an assignment of rights, the agreement also required the Savoy Plaza Apartments to adhere to fair collection practices. If the Savoy Plaza Apartments had indeed conveyed to Alco all of its rights to Poirier's debt and had no remaining rights, then the Savoy Plaza Apartments would have had no right to collect the debt owed by Poirier, and an agreement to abide by and to adhere to fair collection practices would have been unnecessary. Finally, in the act of assignment, Alco agreed to pay all costs in connection with the collection of the debt. If Alco owned the debt, logically it would be its responsibility to pay for the collection of its own debt. Thus, if the debt truly had been transferred from the Savoy Plaza Apartments to Alco, then a provision as to the payment of costs of collection would not have been necessary.
For the reasons set forth above, we find that the act of assignment does not convey to Alco an ownership interest of the Savoy Plaza Apartments' right to the debt owed.

PRACTICE OF LAW
Having determined that the act of assignment did not transfer an ownership interest in Poirier's debt, we must determine whether the filing of the suit by Alco to collect the debt owed to the Savoy Plaza Apartments constitutes the unauthorized "practice of law."
It is unlawful for a natural person who has not been first duly and regularly licensed and admitted to practice law by the Louisiana Supreme Court to engage in the practice of law in this state. LSA-R.S. 37:213(1); Duncan v. Gordon, 476 So.2d 896, 897 (La.App. 2nd Cir.1985).
LSA-R.S. 37:213 provides, in pertinent part, as follows:
No natural person, who has not first been duly and regularly licensed and admitted to practice law by the supreme court of this state, no corporation or voluntary association except a professional law corporation organized pursuant to Chapter 8 of Title 12 of the Revised Statutes, and no partnership or limited liability company except one formed for the practice of law and composed of such natural persons, corporations, voluntary associations, and/or limited liability companies, all of whom are *742 duly and regularly licensed and admitted to the practice of law, shall:
(1) Practice law;
(2) Furnish attorneys or counsel or an attorney and counsel to render legal services;
(3) Hold himself or itself out to the public as being entitled to practice law;
(4) Render or furnish legal services or advice;
(5) Assume to be an attorney at law or counselor at law;
(6) Assume, use or advertise the title of lawyer, attorney, counselor, advocate or equivalent terms in any language, or any phrase containing any of these titles, in such manner as to convey the impression that he is a practitioner of law; or
(7) In any manner advertise that he, either alone or together with any other person, has, owns, conducts or maintains an office of any kind for the practice of law.
LSA-R.S. 37:212 defines the "practice of law" as follows:
A. The practice of law means and includes:
(1) In a representative capacity, the appearance as an advocate, or the drawing of papers, pleadings or documents, or the performance of any act in connection with pending or prospective proceedings before any court of record in this state; or
(2) For a consideration, reward, or pecuniary benefit, present or anticipated, direct or indirect;
(a) The advising or counseling of another as to secular law;
(b) In behalf of another, the drawing or procuring, or the assisting in the drawing or procuring of a paper, document, or instrument affecting or relating to secular rights;
(c) The doing of any act, in behalf of another, tending to obtain or secure for the other the prevention or the redress of a wrong or the enforcement or establishment of a right; or
(d) Certifying or giving opinions as to title to immovable property or any interest therein or as to the rank or priority or validity of a lien, privilege or mortgage as well as the preparation of acts of sale, mortgages, credit sales or any acts or other documents passing titles to or encumbering immovable property.
B. Nothing in this Section prohibits any person from attending to and caring for his own business, claims, or demands; or from preparing abstracts of title; or from insuring titles to property, movable or immovable, or an interest therein, or a privilege and encumbrance thereon, but every title insurance contract relating to immovable property must be based upon the certification or opinion of a licensed Louisiana attorney authorized to engage in the practice of law. Nothing in this Section prohibits any person from performing, as a notary public, any act necessary or incidental to the exercise of the powers and functions of the office of notary public, as those powers are delineated in Louisiana Revised Statutes of 1950, Title 35, Section 1, et seq.
C. Nothing in this Section shall prohibit any partnership, corporation, or other legal entity from asserting any claim, not exceeding five thousand dollars, or defense pertaining to an open account or promissory note, or suit for eviction of tenants on its own behalf in the courts of limited jurisdiction on its own behalf through a duly authorized partner, shareholder, officer, employee, or duly authorized agent or representative. No partnership, corporation, or other entity may assert any claim on behalf of another entity or any claim assigned to it.
D. Nothing in Article V, Section 24, of the Constitution of Louisiana or this Section shall prohibit justices or judges from performing all acts necessary or incumbent to the authorized exercise of duties as judge advocates or legal officers.
Generally, an obligation cannot exist without a lawful cause. LSA-C.C. art. 1966; Crocker v. Levy, 615 So.2d 918, 921 (La.App. 1st Cir.1993). The cause of an obligation is unlawful when the enforcement of the obligation would produce a result prohibited by law or against public policy. LSA-C.C. art. 1968; Crocker v. Levy, 615 So.2d at 921. A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A *743 contract that is absolutely null may not be confirmed. Absolute nullity may be invoked by any person or may be declared by the court on its own initiative. LSA-C.C. art. 2030; Crocker v. Levy, 615 So.2d at 921.
Any contract made by a non-lawyer to render services in violation of LSA-R.S. 37:213 is for an unlawful cause. Duncan v. Gordon, 476 So.2d at 897. The courts have on numerous occasions addressed different factual situations and determined whether such conduct constituted the practice of law. See Duncan v. Gordon, 476 So.2d at 898-99;[5]Succession of Humes, 467 So.2d 25, 29 (La. App. 1st Cir.), writ denied, 472 So.2d 914 (La.1985),[6]Dunn v. Land and Marine Properties, Inc., 609 So.2d 284, 290 (La.App. 3rd Cir.1992), writ denied, 614 So.2d 1252 (La. 1993);[7] and Crocker v. Levy, 615 So.2d at 921.[8] Consequently, any contract, which constitutes the practice of law by a lay person, is against public policy and is absolutely null. Duncan v. Gordon, 476 So.2d at 897.
It is undisputed that Alco is not licensed to practice law in Louisiana. Therefore, the issue to be resolved is whether the services performed by Alco pursuant to the contingency fee arrangement, namely, representing the Savoy Plaza Apartments in the collection of the debt owed to the Savoy Plaza Apartments, constitute the unauthorized practice of law.
In the context of collection practices, the courts of this state have considered whether such services constitute the practice of law. In Pisarello v. Administrator's Service Corp., 464 So.2d 917, 919 (La.App. 4th Cir.), writ denied, 466 So.2d 473 (La.1985), a collection agency, which was not authorized to practice law, was precluded from giving advice regarding prescription of claims. In Andrus v. Guillot, 160 So.2d at 806, the plaintiff was a collection agency that entered into a contract with the defendant to collect an account owed to the defendant. Plaintiff was to collect a fee of 33 1/3%, if the account was collected without having to refer the *744 matter to an attorney, and a fee of 50%, if the matter was referred to an attorney for collection. Subsequent to the employment of plaintiff to collect the account, the debtor made payments directly to the defendant. The account was settled for an amount which was less than the amount owed to the defendant. Plaintiff made a demand on the defendant, demanding to collect his one-third commission on said account. Defendant resisted said claim. On appeal, the court held that, under the provisions of LSA-R.S. 37:212, plaintiff was actually engaged in the practice of law contrary to said statute and, as such, was not entitled to recover. Andrus v. Guillot, 160 So.2d at 806.
In Medical Audit Service, Inc. v. Martinez, 215 So.2d 160, 160 (La.App. 3rd Cir. 1968), the plaintiff acquired, by assignment, two accounts owed by the defendant to a hospital and a doctor. After acquiring these accounts, the plaintiff brought suit against the defendant for the total owed on both accounts. In finding that the plaintiff was not acting as collecting agent and was not engaged in the unauthorized practice of law, the court determined that the doctor and the hospital had sold and assigned their interests in the accounts to the plaintiff for a cash consideration. As a result, the plaintiff's actions did not constitute the unauthorized practice of law.
In the instant case, because we found that the act of assignment executed between Alco and the Savoy Plaza Apartments did not transfer ownership of the debt from the Savoy Plaza Apartments to Alco, Alco's action in the filing of the suit in the small claims division of the Baton Rouge City Court to collect the debt of Savoy Plaza Apartments constitutes the practice of law. Because Alco is not licensed to practice law in Louisiana, the filing of the suit by Alco to enforce the rights of the Savoy Plaza Apartments constitutes the unauthorized practice of law. As such, the contract between the Savoy Plaza Apartments and Alco is in contravention of LSA-R.S. 37:213 and is absolutely null and without effect.

APPLICABILITY OF COLLECTION AGENCY REGULATION ACT
In 1993, the Louisiana legislature enacted the Collection Agency Regulation Act, LSA-R.S. 9:3576.1 et seq., which became effective September 1, 1993. This legislation was enacted to regulate the licensing, operations, and practices of collection agencies and debt collectors to protect the welfare of the citizens of this state. LSA-R.S. 9:3576.2.
LSA-R.S. 9:3576.3(2)(a) defines a "collection agency" and "debt collector" as "synonymous and interchangeable terms"[9] meaning
any person who uses any instrumentality of intrastate or interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or *745 who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.
It is undisputed that Alco is a licensed collection agency, as evidenced by its license, issued on October 4, 1993.
Alco contends that LSA-R.S. 9:3576.19 contemplates that a licensed collection agency may legally and validly take an assignment of the claim of its client.[10] Alco reasons that, because the statutory provisions authorize such an assignment, the filing of a suit by a collection agency on an assigned debt is against neither the law nor the public policy of the State of Louisiana. Alco further reasons that, to the extent that the court's decision in Andrus v. Guillot, 160 So.2d 804, conflicts with LSA-R.S. 9:3576.19 and the other provisions of the Collection Agency Regulations Act, said decision is legislatively overruled.
LSA-R.S. 9:3576.19 addresses the presumption of the validity of an assignment and provides as follows:
In any suit brought by a licensee to collect the claim of his client or customer, the assignment of the claim to the licensee shall be conclusively presumed valid if the assignment is filed in court with the petition, unless objection is made thereto by the debtor in an answer filed at least five days prior to trial.
LSA-R.S. 9:3576.19 does not purport to empower a licensed collection agency to collect a debt which has not been validly assigned to it. Rather, it authorizes licensed collection agencies to collect debts which have been assigned by clients.
In this case, because there was no valid assignment, we find it unnecessary to determine whether the Collection Agency Regulation Act, which purports to authorize a non-lawyer to institute a lawsuit on behalf of a client to collect a debt, infringes upon the judicial function.
However, the law is clear that the Louisiana Supreme Court has exclusive and plenary power to define and regulate all facets of the practice of law, including the admission of attorneys to the bar, the professional responsibility and conduct of lawyers, the discipline, suspension and disbarment of lawyers, and the client-attorney relationship. Succession of Wallace, 574 So.2d 348, 350 (La.1991); Louisiana State Bar Association v. Edwins, 540 So.2d 294, 298-99 (La.1989); Saucier v. Hayes Dairy Products, Inc., 373 So.2d 102, 109 (La.1979) (Dennis, J. dissenting from opinion on original hearing). The sources of this power are: the supreme court's inherent judicial power emanating from the constitutional separation of powers, LSA-Const. Art. 2, Succession of Wallace, 574 So.2d at 350; Saucier v. Hayes Dairy Products, Inc., 373 So.2d at 109; the traditional inherent and essential function of attorneys as officers of the courts, Succession of Wallace, 574 So.2d at 350; and the supreme court's exclusive original jurisdiction of attorney disciplinary *746 proceedings. LSA-Const. Art. 5, § 5(B); Succession of Wallace, 574 So.2d at 350; Saucier v. Hayes Dairy Products, Inc., 373 So.2d at 109, 115.
The standards governing the conduct of attorneys by rules of the supreme court unquestionably have the force and effect of substantive law. Succession of Wallace, 574 So.2d at 350; Succession of Cloud, 530 So.2d 1146, 1150 (La.1988); Succession of Boyenga, 437 So.2d 260, 263 (La.1983); Leenerts Farms, Inc. v. Rogers, 421 So.2d 216, 219 (La.1982); Singer, Hutner, Levine, Seeman & Stuart v. Louisiana State Bar Association, 378 So.2d 423, 426 (La.1979); Saucier v. Hayes Dairy Products, Inc., 373 So.2d at 110, 115.
Conversely, the legislature cannot enact laws defining or regulating the practice of law in any aspect without the supreme court's approval or acquiescence because that power properly belongs to the supreme court and is reserved to it by the constitutional separation of powers. LSA-Const. Art. 2; Succession of Wallace, 574 So.2d at 350. Accordingly, a legislative act purporting to regulate the practice of law has commendatory effect only until it is approved by the supreme court as a provision in aid of its inherent judicial power. Succession of Wallace, 574 So.2d at 350. Moreover, the supreme court will ratify legislative acts that are useful or necessary to the exercise of its inherent judicial power, but it will strike down statutes which tend to impede or frustrate its authority. Succession of Wallace, 574 So.2d at 350; Singer, Hutner, Levine, Seeman & Stuart v. Louisiana State Bar Association, 378 So.2d at 426; Saucier v. Hayes Dairy Products, Inc., 373 So.2d at 110, 115.
The people's constitutional reposition of power carries with it a mandate for the full and responsible use of that power. Consequently, the supreme court has not only the power, but also the responsibility, to regulate the practice of law in this state. Succession of Wallace, 574 So.2d at 350; Louisiana State Bar Association v. Dumaine, 550 So.2d 1197, 1200 (La.1989); Succession of Boyenga, 437 So.2d at 263; Saucier v. Hayes Dairy Products, Inc., 373 So.2d at 115; Louisiana State Bar Association v. Edwins, 540 So.2d at 298-99.
In the instant case, the assignment at issue did not transfer to Alco the debt owed to the Savoy Plaza Apartments by Poirier. Accordingly, Alco did not have a right of action to institute proceedings in its own name to collect the monies owed on that debt.

CONCLUSION
For the above reasons, the writ of certiorari, prohibition, and mandamus previously issued by this court is made peremptory. The judgment of the city court, denying Poirier's exception pleading the objection of no right of action and refusing to dismiss Alco's claims, is reversed. Judgment is rendered herein in favor of Poirier and against Alco, sustaining the exception pleading the objection of no right of action and dismissing Alco's petition. Alco is assessed with all costs.
WRIT MADE PEREMPTORY. JUDGMENT DENYING EXCEPTION IS REVERSED, AND CASE IS DISMISSED.
PARRO, J., concurs.
NOTES
[1] Judge J. Michael McDonald, Nineteenth Judicial District Court, is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] LSA-R.S. 13:5200 authorizes plaintiffs to bring actions on their own behalf and provides as follows:

The purpose of this Part is to improve the administration of justice in small noncriminal cases, and make the judicial system more available to and comprehensible by the public; to simplify practice and procedure in the commencement, handling, and trial of such cases in order that plaintiffs may bring actions in their own behalf, and defendants may participate actively in the proceedings rather than default; to provide an efficient and inexpensive forum with the objective of dispensing justice in a speedy manner; and generally to promote the confidence of the public in the overall judicial system by providing a forum for small claims.
[3] The act of assignment was not attached to the petition, but was attached to Alco's answers to interrogatories and requests for production and made part of the record. Any issue regarding the failure to file a copy of the assignment with the petition was not raised by either party either before the city court or in the writ application or opposition thereto. Therefore, this issue is not before us.
[4] The agreement is signed by both parties, but is not witnessed or notarized.
[5] In Duncan v. Gordon, 476 So.2d 896, 898-99 (La.App. 2nd Cir. 1985), the court determined that, pursuant to the contract, the defendant selected and took the plaintiff to the doctor who treated him and to the hospital; defendant conducted all negotiations with the insurance adjuster regarding the settlement of plaintiff's claim; defendant picked up the settlement draft and deposited it into her company's account; and defendant retained fifty percent of the plaintiff's settlement funds. In short, defendant, in return for compensation, took all of the necessary steps in order for the plaintiff to obtain redress for the personal injuries he suffered. The court reasoned that, in the performance of her contract, defendant had to advise plaintiff concerning the redress of a legal wrong. Defendant was not qualified to give this advice because she did not possess the legal training required by the Louisiana Supreme Court. By contracting to represent plaintiff in negotiating a settlement with the insurance company, defendant attempted to function as and perform the duties of a duly licensed attorney, which is prohibited by law. Accordingly, the court in Duncan held that such actions constitute the practice of law. Because the defendant was not authorized to practice law in this state, the court held that the contingency fee contract, authorizing her to perform these services, was in violation of LSA-R.S. 37:213. As such, the contingency fee contract between plaintiff and defendant was an absolute nullity.
[6] In Succession of Humes, 467 So.2d 25, 29 (La.App. 1st Cir.1985), the contracts at issue authorized an individual to hire an attorney to pursue the succession claims of certain heirs. The court determined that this clause constituted an attempt to engage that individual in the unauthorized practice of law, in violation of LSA-R.S. 37:213. Accordingly, the court held that the "contracts" were null and void ab initio.
[7] In Dunn v. Land and Marine Properties, Inc., 609 So.2d 284, 290 (La.App. 3rd Cir.1992), the contract of representation at issue specifically called for Land and Marine Properties, Inc. "to perform all necessary administrative and legal work, including pursuit of litigation if necessary." The court held that the contract was null on its face because there was no question as to whether the services to be performed constituted the practice of law. The contract expressly provided that Land and Marine Properties, Inc. perform legal services. As such, the court determined that the contract was null and void on its face, regardless of whether Land and Marine actually practiced law.
[8] In Crocker v. Levy, 615 So.2d 918, 921 (La.App. 1st Cir. 1993), the court determined that a promise to render "business, financial and other assistance," including securing "reputable legal counsel" in exchange for a large contingency fee based on the legality of a will was contrary to LSA-R.S. 37:213 which forbids, with few exceptions, any person, partnership, or corporation that is not duly licensed to practice law in this state from furnishing legal representation for another. Accordingly, the court affirmed the dismissal of the plaintiff's action on a motion for summary judgment.
[9] Pursuant to LSA-R.S. 9:3576.3(2)(a), the terms "collection agency" and "debt collector" also include each of the following:

(i) A person directly or indirectly engaged in soliciting claims for collection, or collecting or attempting to collect claims owed or due or asserted to be owed or due another nonaffiliated person.
(ii) Any person or creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.
However, certain activities are excluded from the definition of "collection agency" and "debt collector." LSA-R.S. 9:3576.3(2)(b) sets forth the activities so excluded and provides as follows:
The term "debt collector" or the term "collection agency" shall not mean nor include:
(i) Any officer or employee of a creditor while, in the name of the creditor, is collecting debts for such creditor, or a person collecting or attempting to collect claims that are owed to that person or to an affiliated person, whether directly as an originating creditor or indirectly as a result of purchase, transfer of ownership, or subrogation of rights.
(ii) Any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts.
(iii) Any officer or employee of the state of Louisiana or the United States to the extent that collecting or attempting to collect any debt is in the performance of his official duties.
(iv) An individual engaged in soliciting claims for collection, or collecting or attempting to collect claims on behalf of a licensee under this Part, if the individual is an employee of the licensee.
(v) A person whose collection activities are carried on in his or its true name and are confined and directly related to the operation of a business other than that of a collection agency, such as but not limited to banks, savings banks, savings and loan associations, credit unions, public officers acting in their official capacities, and persons acting under court order.
(vi) Any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt.
(vii) Any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors.
(viii) An attorney collecting or attempting to collect claims for clients.
(ix) A person who, on behalf of another person, prepares or mails monthly or periodic statements of accounts due if all payments are made to that other person and no other collection efforts are made by the person preparing the statements of account.
(x) Any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity:
(aa) Is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement.
(bb) Concerns a debt which was originated by such person.
(cc) Concerns a debt which was not in default at the time it was obtained by such person.
(dd) Concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.
[10] Alco did not file a copy of the assignment with the petition and does not attempt to claim the benefit of the presumption set forth in LSA-R.S. 9:3576.19.