Dear Mr. Hebert:
The opinion of this office was requested concerning the employment of Carl A. Chauvin by the Bayou Lafourche Fresh Water District (the "District"). This office was advised that in February of 1994 the District, mandated to prevent pollution in Bayou Lafourche, was in need of information concerning various state environmental policies, rules and regulations. The District entered into a contract with Mr. Chauvin, a former employee of the Department of Environmental Quality, to review existing ordinances and polices enacted by the District and also to research existing state and federal environmental rules, regulations and policies. Mr. Chauvin is also an attorney.
Pursuant to Act 196 of 1992 ("Act 196"), the District cannot employ an attorney, but must use the services of the District Attorney. The District Attorney advised the District that the District Attorney's Office did not have the environmental expertise to address the issues and suggested that the District contract for such services.
This office was furnished with a copy of a Consulting Services Contract (the "Contract") between the District and Mr. Chauvin, which provides that Mr. Chauvin will render professional services to the Board in the capacity of Environmental Consultant for a term not to exceed 90 days commencing February 17, 1994. The services to be provided under the Contract included:
 (a) Review all existing ordinances and policies previously enacted by the BLFWD and determine which parts are congruent with existing state and federal environmental laws and policies and report such to the Administrator.
 (b) Develop a code of ordinances for possible enactment by the Board of the BLFWD which shall include all congruent parts of existing ordinances and policies of the BLFWD with state and federal laws . . .
 (c) Develop a permitting and variance procedure for the BLFWD to consider requests for building structures in and along the battures of Bayou Lafourche.
 (d) Develop a procedure to enforce the new code of ordinances of the BLFWD, including provisions allowing the BLFWD to bring suit against violators of said code, under the Citizens Suit Provision of the Louisiana Environmental Quality Act.
 (e) Present the new code of ordinances to the Administrator in a format which can be immediately acted upon by the Board of the BLFWD, if it so chooses.
 (f) Provide professional advice to the Administrator and/or the Board of the BLFWD upon request by either party, in person if so requested, on environmental and structure issues.
The Contract requires the invoices to state very detailed information, including Mr. Chauvin's name and address, a reference to the Contract for Environmental Consulting Services, identification of the services being invoiced, the number of hours invoiced by type of service and the total compensation earned for each type of service.
The opinion request states that Mr. Chauvin did not legally represent or advise the District in any pending legal matters; however, Mr. Chauvin did submit some of his bills on his attorney letterhead. Mr. Chauvin was paid an hourly fee of $60.00 per hour.
The question presented is whether the District could legally employ an environmental consultant who is also an attorney and further whether the Contract and the services provided in connection therewith were for consulting work or legal services.
Act 196 prohibits the District from employing an attorney but must use the services of the district attorney's office. It is the opinion of this office that this provision prohibits the District from employing an attorney to perform legal services; however, the District would not be prohibited from hiring a consultant who just happens to be an attorney, provided that the consultant/attorney does not provide legal services to the District. It is the further opinion of this office that the District could not lawfully hire a consultant/attorney to perform legal work and categorize the services being performed as consulting services as a subterfuge to circumvent the provisions of Act 196.
The practice of law is defined in R.S. 37:212, which provides in pertinent part as follows:
 "A. The practice of law means and includes:
 (1) In a representative capacity, the appearance as an advocate, or the drawing of papers, pleadings or documents, or the performance of any act in connection with pending or prospective proceedings before any court of record in this state; or
 (2) For a consideration, reward, or pecuniary benefit, present or anticipated, direct or indirect;
 (a) The advising or counseling of another as to secular law;
 (b) In behalf of another, the drawing or procuring, or the assisting in the drawing or procuring of a paper, document, or instrument affecting or relating to secular rights;
 (c) The doing of any act, in behalf of another, tending to obtain or secure for the other the prevention or the redress of a wrong or the enforcement or establishment of a right; or
 (d) Certifying or giving opinions as to title to immovable property or any interest therein or as to the rank or priority or validity of a lien, privilege or mortgage as well as the preparation of acts of sale, mortgages, credit sales or any acts or other documents passing titles to or encumbering immovable property." (Emphasis added)
In Duncan v. Gordon, 476 So.2d 896 (La.App. 2d Cir. 1985), the court stated, "The practice of law relates to the renditionof services for others that call for the professional judgment ofa lawyer. The essence of the professional judgment of the lawyeris his educated ability to relate the general body and philosophyof law to a specific legal problem of a client." (Emphasis added)
In Louisiana State Bar Assoc. v. Edwins, 540 So.2d 294
(La. 1989), the court upheld the defendant's conviction for, among other things, aiding his paralegal in the unauthorized practice of law, in violation of LSA-R.S. 37:212 and 37:213. The court discussed the practice of law as follows:
 ". . . It is neither necessary nor desirable to attempt the formulation of a single, specific definition of what constitutes the practice of law. Functionally, the practice of law relates to the rendition of services for others that call for the professional judgment of a lawyer. The essence of the professional judgment of the lawyer is his educated ability to relate the general body and philosophy of law to a specific legal problem of a client; and thus, the public interest will be better served if only lawyers are permitted to act in matters involving professional judgment."
While not applicable to the District, the legislature has defined the term "consulting services" for purposes of the Professional, Personal, Consulting, and Social Services Procurement Code to mean:
 ". . . work, other than professional, personal, or social service, rendered by either individuals or firms who possess specialized knowledge, experience, and expertise to investigate assigned problems or projects and to provide counsel, review, design, development, analysis, or advice in formulating or implementing programs or services, or improvements in programs or services, including but not limited to such areas as management, personnel, finance, accounting, planning, data processing, and advertising contracts . . ."
The question of whether the services performed by Mr. Chauvin were in the nature of consulting services or legal services is an issue of fact and this office is not a finder of fact. Nevertheless, it could be argued that the services performed by Mr. Chauvin were legal in nature, and might even, if performed by a non-attorney, be deemed to be the unauthorized practice of law under R.S. 37:212 and 213. The services performed by Mr. Chauvin included:
 1. Supplying a memorandum reviewing the statutory authority for the District to regulate environmental and structure issues, suggesting that the District seek legislation to address certain problems in the District's enabling legislation, discussing potential exposure by the District and due process rights, and relating a detailed conversation that Mr. Chauvin had with a LSU law professor;
 2. Researching the legislative history of the District;
 3. Researching the State sanitary code, the litter statute and the beautification program;
 4. Researching questions of due process; and
 5. Researching model ordinances and production of ordinance to effectuate the authority granted the District by the legislature.
In summary, it is the opinion of this office that the District is prohibited from hiring an attorney to provide legal services; however, the District may hire a consultant to provide true consulting services even though the consultant is an attorney. The District may not hire a consultant who provides legal advice under the guise of providing consulting services. It appears that the services provided the District by Mr. Chauvin were in the nature of legal services.
Trusting this adequately responds to your request, we remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 By: MARTHA S. HESS
Assistant Attorney General
RPI/MSH/dra
xc: Rep. Warren Triche Carl A. Chauvin Walter Naquin, Jr.