| JOAN BERNARD ARMSTRONG, Judge.
This is an executory process foreclosure action. Defendant-Appellant New Orlea-nian Limited Partnership (“NOLP”) failed to make payments upon a loan secured by a mortgage originally held by Wells Fargo Bank, Minnesota, N.A., as Trustee for Na-tionsLink Funding Corporation, Commercial Mortgage Pass-Through Certificates, Series 1998-2 (“the Trustee”). After the foreclosure proceedings were initiated, the Trustee assigned to NLFC 1998-2 St. Charles, L.L.C. (“NLFC”) the promissory note evidencing the loan. Thereafter, NLFC was substituted as a party plaintiff in this litigation.
The Trustee filed a petition for executo-ry process, seeking the seizure and sale of the St. Charles Regency apartment complex in New Orleans (the “St. Charles Regency”), which was the property securing the loan. The trial court issued a writ of seizure, and the sheriff tentatively scheduled a sale for April 19, 2001. In response, NOLP filed a petition to enjoin the seizure and sale, alleging certain technical deficiencies as to the use of executory process and that the writ of seizure was obtained as a result of the unauthorized practice of law.
The Trustee filed an answer to NOLP’s petition and amended its petition for exec-utory process to address the technical defects of which NOLP complained. |? The trial court denied NOLP’s motion to enjoin the sale. NOLP sought supervisory writs in this court. This court, finding no error in the ruling of the trial court, denied NOLP’s writ application. NOLP did not apply to this court for rehearing, and NOLP did not seek review in the Louisiana Supreme Court.
Subsequent to the sheriffs sale, NLFC filed a motion for summary judgment to dispose of NOLP’s outstanding claims. The denial of the preliminary injunction, and this court’s denial of writs, had effectively disposed of all of NOLP’s claims of technical deficiencies in the executory process action. Thus, all that remained was NOLP’s claim that the order of seizure was obtained as a result of the unauthorized practice of law. After a hearing, the trial court issued a judgment granting NLFC’s motion for summary judgment and dismissed NOLP’s action. NOLP appeals from that judgment. We will affirm.
NOLP is the obligor on a note in the approximate amount of $8.4 million, secured by a mortgage on the St. Charles Regency. NOLP failed to make payments on the note, which led to a series of collection efforts and triggered a provision in the mortgage authorizing the use of execu-tory process. By letter dated January 16, 2001, NOLP was contacted by Mr. John *390 D’Errico of Lennar Partners, Inc. (“Len-nar”). The letter stated that Lennar would be servicing the loan and that all future loan payments should be sent to the company’s Florida office. Mr. D’Errico wrote a second letter to NOLP, dated January 16, 2001, and proposed terms under which Lennar and NOLP would meet to discuss the status of the loan. The letter also stated that the company was “empowered to act on behalf of the [■¡Trustee under the Loan Documents in the capacity of attorney-in-fact.” By a letter dated January 17, 2001, Mr. D’Erri-co notified NOLP that it was in default. In that letter, Mr. D’Errico stated that Lennar was “empowered to act on behalf of the Lender in connection with the Loan.” The letter also stated that if the lender did not receive all amounts due within ten days, then the lender would take all actions it deemed appropriate, including seeking foreclosure. By a letter dated January 29, 2001, NOLP received notice from the law firm of Taylor, Porter, Brooks & Phillips (“TPB & P”). The TPB & P letter advised NOLP that the loan had been referred to them for collection and that TPB & P would institute foreclosure proceedings if payment was not made within fifteen days. After NOLP failed to make the payments requested, TPB & P filed a petition for executory process on behalf of the lenders.
Summary judgment should be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law”. La.C.C.P. art. 966(B). NOLP argues that the order should be nullified because it was obtained through the unlicensed practice of law by Lennar. NLFC contends that Lennar did not engage in the unlicensed practice of law.
NOLP claims that Lennar was acting under the terms of a contract authorizing Lennar to perform legal services for the lender. NOLP focuses on the correspondence it received from Lennar before the executory process was initiated. One of the letters states that Lennar was empowered to act as the attomey-in-fact for the lender. Another letter states that Lennar was empowered to act on behalf of the lender, notifies NOLP that it is in default under the loan, requests NOLP to satisfy the deficiency within ten days, and advises NOLP that the lender would take all actions, including seeking foreclosure, if the deficiency were not satisfied [4within that timeframe. NOLP argues these statements indicate that Lennar had been authorized by the lenders to perform legal services. We disagree.
First, by describing itself as the “attorney-in-fact,” Lennar indicated that it was not authorized to perform legal services. An attorney-in-fact is “[a] private attorney authorized by another to act in his place and stead, either for some particular purpose, as to do a particular act, or for the transaction of business in general, not of a legal character.” Black’s Law Dictionary (6th ed.1990) (emphasis added).
Second, NOLP has not produced any contract or other document under which Lennar is to provide legal services. It appears from the record that Lennar’s obligations to the lender are governed by the terms of a Pooling and Servicing Agreement. A copy of that agreement is contained in the record. Based on what the record contains, the document appears to identify Lennar as the “Special Servicer” whose obligations are to “service and administer the Mortgage Loans ... in accordance with any and all applicable laws and the terms of this Agreement ...” This provision does not authorize or obligate *391 Lennar to perform legal services. To the contrary, it requires Lennar to perform its duties in accordance with the laws that apply. Because it is illegal for a corporation, other than a professional law corporation, to practice law in Louisiana this provision necessarily denies Lennar the power to represent the lender in legal matters. See La.R.S. 37:213.
Not only does the evidence show that Lennar was not authorized to perform legal services, but also we do not believe that Lennar’s activities as “Special Servi-cer” amounted to the practice of law. One of the letters addressed to NOLP states that Lennar had assumed certain servicing responsibilities on the loan and that future payments should be directed to Lennar. Another letter identifies Lennar Las the “Special Servicer” and proposes terms under which Lennar and NOLP would meet to discuss the status of the loan. The January 17, 2001, letter notifies NOLP that it is in default and says the Lender would seek foreclosure and take other actions if the problem were not cured within 10 days. Finally, a January 29, 2001 letter from TPB & P advises NOLP that Lennar referred the loan to that law firm for collection. NOLP contends that these pieces of correspondence constitute the unauthorized practice of law under a number of judicial decisions addressing the issue. We disagree.
In Pisarello v. Administrator’s Service Corp., 464 So.2d 917 (La.App. 4 Cir.1985), a collection agency was sued by a client for failing to advise it as to prescription of claims. The Pisarello court held that the agency was legally precluded from doing so because it was not authorized to practice law. Unlike Pisarello, there is no evidence that Lennar provided any legal advice.
In Andrus v. Guillot, 160 So.2d 804 (La.App. 3 Cir.1964), the court declared that an agent could make a peaceful collection attempt or adjust a bill without engaging in the practice of law, but that it could not threaten a debtor with legal proceedings or represent a creditor in court either directly or indirectly through an attorney engaged by the collector. Andrus does not support NOLP’s position. The letters that NOLP received from Lennar are clearly the kind of collection attempts that a non-attorney could perform under An-drus. NOLP believes that the January 17, 2001, letter contains a threat by Lennar that it will take the kind of legal action that the Andrus court placed off limits to non-attorneys. We disagree. The January 17, 2001 letter advises NOLP that “the Lender”, not Lennar, would take legal action if NOLP did not cure the default. Moreover, the final warning of legal proceedings appeared in the letter from | f)TPB & P. NOLP claims that Lennar hired TPB & P. However, there is no evidence that it did so. The initial letter NOLP received from TPB & P indicates that “the Trustee” referred the loan to TPB & P through Lennar.[1]
In Duncan v. Gordon, 476 So.2d 896 (La.App. 2 Cir.1985), the defendant was to take all steps necessary to obtain redress for the plaintiff’s personal injuries suffered in a car accident. The court refused to honor the 50 percent contingency fee arrangement because the defendant had to provide legal advice to the plaintiff. There is no evidence that Lennar attempted to, or in fact did, provide legal advice.
*392 In Crocker v. Levy, 615 So.2d 918 (La.App. 1 Cir.1993), a CPA entered into a contingency fee contract with a client. Under the terms of the contract, the CPA agreed to procure a lawyer for the client, and the client agreed to pay the CPA a percentage of certain amounts recovered in a suit contesting her father’s will. Crocker is distinguishable on its facts. In the present case, there is no evidence that Lennar agreed to secure a lawyer in exchange for a percentage of the amounts recovered in a lawsuit.
In Alco Collections, Inc. v. Poirier, 95-2582 (La.App. 1 Cir. 09/27/96), 680 So.2d 735, a creditor engaged a collection agency to collect a debt in exchange for half of the amounts it collected. The agency filed suit in its own name to secure payment against the debtor. The court of appeal concluded that the agency’s actions constituted the unauthorized practice of law. As a result, the court declared the contract between the agency and the creditor to be null and without effect. In addition, because the collection agency did not own the debt, the court sustained [7the debtor’s peremptory exception pleading the objection of no right of action. In the present case, Len-nar did not file suit in its own name to collect the debt owed by NOLP.
In Dunn v. Land and Marine Properties, Inc., 609 So.2d 284 (La.App. 3 Cir. 1992), the heirs of the Dunn estate entered into a contract with a business corporation for it to “perform all administrative and legal work, including the pursuit of litigation if necessary” to recover property from the estate. 609 So.2d at 285. The contract called for payment in the form of a contingency fee of 50% of anything of value received and a mineral lease on any property recovered. The company assigned the contract of representation to its president, an attorney who filed a petition for possession. The trial court issued a judgment of possession that placed the heirs in possession of one half of the estate and the attorney in possession of the other half. The court of appeal concluded that the contract was null and void on its face because it specifically called on the business corporation to perform legal work that it was prohibited from doing under state law. Furthermore, because the judgment of possession was the result of a null contract, the court concluded that the judgment was null and void also.
In Dunn, the contract expressly provided for the provision of legal services by the defendant corporation for the plaintiffs. Here, Lennar’s contract did not authorize it to perform legal services.
Lastly, NOLP argues that Mr. D’Erri-co’s affidavit was not made on his personal knowledge and belief, as required by La. C.C.P. art. 967. Specifically, NOLP argues that we should question whether Mr. D’Errieo had personal knowledge of the facts contained in the statements he made in the affidavit because in a deposition he gave during the course of this litigation he apparently did not |8know the correct amount of the monthly installments due on the loan. However, as the action below was an executory process foreclosure proceeding, and not an action for a deficiency judgment, only the fact that NOLP was in default at all, and not the amount of the overdue payments, was relevant. Consequently, whether or not Mr. D’Errico knew the exact amounts of the payments was not material to the foreclosure.
For the foregoing reasons, we affirm the decision of the trial court to grant the motion for summary judgment and to dismiss all of NOLP’s remaining claims in this matter.
AFFIRMED.

. We note that Act 1997, No 1088, which amended a section of the Collection Agency Regulation Act, La. R.S. 9:3576.19, appears to have modified the holding of Andrus, so that all of the collection attempts made in Andrus would be legal. However, we need not decide that question, as the facts of the present case are distinguishable from Andrus.