965 So.2d 902 (2007)
James H. "Jim" BROWN, as Commissioner of Insurance for the State of Louisiana
v.
ANA INSURANCE GROUP, a Louisiana Partnership.
No. 2006 CA 0626.
Court of Appeal of Louisiana, First Circuit.
July 18, 2007.
Rehearing Denied October 2, 2007.
*905 Donald C. Massey, Robert N. Markle, New Orleans, Counsel for Plaintiff/Defendant-in-Reconvention/Appellant Commissioner of Insurance, State of Louisiana.
Shelton Dennis Blunt, Barry E. Ward, Baton Rouge, Counsel for Plaintiff/Appellee Michael D. Adams, Receiver of ANA Insurance Group.
Jackie N. Harris, Arlene D. Knighton, Michael R.D. Adams, Baton Rouge, Counsel for Plaintiff/Appellee Michael Adams, Receiver of Estate of ANA Insurance Group.
Alton Moran, Baton Rouge, Counsel for Plaintiff/Appellee Charles Spedale, Liquidator.
*906 Gregory J. McDonald, New Orleans, Counsel for Intervenor/Appellee Commissioner of Insurance, State of California.
Scott Crawford, James R. Lewis, Baton Rouge, Counsel for Defendant/Appellee ANA Insurance Group.
Lewis O. Unglesby, Baton Rouge, Arthur A. Lemann, III, New Orleans, Counsel for Defendant/Plaintiff-in-Reconvention/Appellee Barbara M. Presley.
Edward J. Walter, Jr., Baton Rouge, Counsel for Defendant/Appellee Estate of Sam Presley, Jr.
Charles E. Hamilton, III, New Orleans, Thomas E. Balhoff, Baton Rouge, Counsel for Third Party Defendants/Appellees Hattier, Sanford & Reynoir and Guthans A. Reynoir.
Andrew Blanchfield, Baton Rouge, Counsel for Third Party Defendant/Appellee Transportation Insurance Company.
Morris Mahana, New Orleans, In Proper Person.
E. Barton Conradi, Warren E. Byrd, Baton Rouge, Counsel for Defendant in Reconvention Commissioner of Insurance, State of Louisiana.
Michael McGlone, New Orleans, Counsel for Third Party Defendant/Appellee Richard Bickerstaff.
Michael Charles Guy, Dominique Jones Sam, Assistant Attorneys General, Baton Rouge, Counsel for Amicus Curiae Charles C. Foti, Jr., Attorney General.
Before: PARRO, KUHN, PETTIGREW, DOWNING, and McCLENDON, JJ.
KUHN, J.
This appeal involves a reconventional demand by the owner of an insolvent insurance company against the Louisiana Commissioner of Insurance, in his capacity as liquidator, for breach of his fiduciary duty.[1] The Commissioner appeals a judgment in favor of plaintiff-in-reconvention, Barbara M. Presley, in the full and true sum of $1,247,132.00, together with legal interest. We affirm.

FACTS AND PROCEDURAL BACKGROUND
In August 1990, Sam Presley, Jr. purchased American National Agents Insurance Group (ANA), a Louisiana partnership that sold automobile insurance, for $50,000, placing 83% ownership in his then girlfriend and later wife, Barbara McDaniel, and 17% ownership in a friend and employee, Morris Mahana.[2] At the same time, Sam Presley, Jr. also purchased two additional companies in his own name, namely United States General Agency (USGA) and American Funding Services, Inc. (AFSI). Subsequent to his acquisition of the companies, Sam Presley, Jr. operated ANA's business by using USGA as a general agent and AFSI as a premium financer.
In 1992, the Louisiana Department of Insurance investigated ANA and determined that the partnership was insolvent *907 and in violation of the minimum surplus requirements of the Louisiana Insurance Code. As a result of the Department's findings, the Commissioner instituted proceedings in the 19th Judicial District Court to place the partnership in conservation on December 11, 1992. Shortly thereafter, on December 18, 1992, an order of rehabilitation was entered. Five months later, on May 17, 1993, the partnership was placed in liquidation.
On October 8, 1993, the district court rendered judgment, recognizing that USGA, AFSI, and ANA constituted a single business enterprise. The effect of the judgment was to merge the assets and liabilities of the affiliated companies into the ANA estate and, as such, the affiliated companies were likewise placed in liquidation.
Once the companies were placed in liquidation, the Commissioner assumed the role of liquidator in accordance with certain provisions of the Louisiana Insurance Code, La. R.S. 22:732 et seq. In conjunction with the liquidation of ANA, USGA, and AFSI, the Commissioner retained certified public accountant Charles Reichman to serve as investment funds manager. Reichman, in turn, contracted with Richard Bickerstaff of Hattier, Sanford & Reynoir to manage the consolidated estate's investment portfolio.
At the time of liquidation, USGA held 50,000 shares of stock in Mobil Telecommunications Technologies Corporation (M-Tel) and 100,000 units of a subordinate M-Tel debenture. Under the supervision of Reichman, the USGA securities were converted into common stock and sold through a programmed or staged sale over a twenty-month period of time between October 1993 and June 1995.[3]
In the interim, in November 1993, the Commissioner filed a petition against Sam and Barbara Presley, together with Morris Mahana, alleging that the defendants were indebted to the ANA estate to the extent of its insolvency as a result of their gross negligence, gross mismanagement, and fraudulent conduct. In October 1994, the Presleys reconvened, alleging that the Commissioner improperly placed ANA in liquidation and that he mismanaged ANA following its takeover.[4]
On September 6, 2002, the Commissioner responded to the Presleys' reconventional demand by filing various exceptions, including a peremptory exception of no right of action, contending that only the estate of ANA, and no private individual, had the right to bring an action for the mismanagement of the assets of ANA. The Commissioner also asserted the defense of statutory immunity pursuant to La. R.S. 9:2798.1.[5] The trial court overruled the exception *908 of no right of action and deferred ruling on the immunity defense pending trial on the merits.
On March 6, 2003, the Commissioner filed a second exception of no right of action or, in the alternative, a motion to dismiss the Presleys' reconventional demand in which the Commissioner urged that Sam Presley, Jr. had previously admitted in federal criminal proceedings arising out of the operation of ANA, that he, and not Barbara Presley, was the true owner of ANA.[6] Additionally, the Commissioner averred that Sam Presley, Jr. had forfeited all of his rights to ANA as a condition to his plea bargain in the federal proceedings. The Commissioner also filed a peremptory exception raising the objection of res judicata or, in the alternative, a motion to dismiss on the ground of collateral estoppel, based on admissions allegedly made by Sam Presley, Jr. in the prior federal criminal case. In a judgment dated March 27, 2003, the trial court overruled the exceptions of no right of action, res judicata, and estoppel. This court and the Louisiana Supreme Court subsequently denied writs. See Brown v. ANA Ins. Group, XXXX-XXXX (La.App. 1st Cir.4/17/03)(an unpublished writ action), writ denied, XXXX-XXXX (La.4/23/03), 842 So.2d 386.
On May 29, 2003, the Commissioner filed a third-party petition against Hattier, Sanford & Reynoir, together with Bickerstaff and Reichman, individually.[7] In the third-party demand, the Commissioner alleged that the staged sale of the USGA-owned M-Tel securities was defective and contrary to standard industry practices, such that it did not maximize proceeds to the Commissioner and/or the estate of ANA. The Commissioner additionally asserted that the staged sale was implemented so that Hattier, Sanford & Reynoir, together with Bickerstaff and Reichman, would be allowed to charge multiple and excessive commissions to the prejudice of the ANA estate and in violation of their fiduciary and contractual duties. Lastly, the Commissioner complained that there was an improper collusion between Reichman and Bickerstaff. In support of his allegations, the Commissioner averred that Bickerstaff and Reichman were indicted by the District Attorney for the Parish of East Baton Rouge for crimes related to the scheme to defraud and that they pled guilty to the criminal charges.[8] The Commissioner *909 sought indemnification from the third-party defendants for the entire portion of any adverse judgment on the reconventional demand.
Prior to trial, all claims were settled except the reconventional demand against the Commissioner arising out of the sale of USGA-owned M-Tel securities. Trial on the reconventional demand by Barbara Presley commenced on November 5, 2003,[9] at which time the Commissioner reasserted the exception of no right of action and a previous motion in limine, seeking to exclude the claims related to the sale of USGA-owned M-Tel securities. The trial court deferred rulings on both. At the close of plaintiff in reconvention's case, the Commissioner moved for judgment as a matter of law based on immunity. The trial court took that motion under advisement as well.
The trial court subsequently rendered judgment in favor of Barbara Presley, implicitly denying the Commissioner's reurged exception of no right of action and his motions in limine and to dismiss the reconventional demand based on statutory immunity.[10] In its oral reasons for judgment, the trial court stated that Bickerstaff and Reichman had been able to operate with impunity and that they had sold the USGA-owned M-Tel securities in a manner that permitted them to receive unjustified money payments to the prejudice of the estate. The trial court found that under the theory of respondeat superior, damages were justified, noting that although Barbara Presley had claimed $2,494,264 represented her total losses, that entire amount was not due to the fraudulent conduct and substandard performance of Reichman and Bickerstaff. Thus, it awarded half of that sum, $1,247,132.00, in damages along with interest. From the trial court's signed judgment, the Commissioner has suspensively appealed.
On appeal, the Commissioner contends the trial court erred in its conclusions that Barbara Presley had a right of action, that he did not enjoy immunity from liability, and that Barbara Presley proved liability. Louisiana Attorney General Charles C. Foti, Jr., who filed an amicus curiae brief in this appeal on behalf of the citizens of the State of Louisiana, including the policyholders, creditors, and other persons having claims against the estate of ANA, USGA, and AFSI, contends that the judgment is defective because it was rendered without joining the ANA estate, a party he suggests is indispensable in this lawsuit.[11]

DISCUSSION AND ANALYSIS
Upon rendition of a final judgment, the reviewing court may consider the correctness of prior interlocutory rulings. Jarrell v. Carter, 577 So.2d 120, 124 (La. App. 1st Cir.1991), writ denied, 582 So.2d 1311 (La.1991). Thus, we first address the exceptions and defenses asserted by the Commissioner, which were implicitly overruled by the trial court.
*910 No Right of Action
The peremptory exception pleading the objection of no right of action tests whether the particular plaintiff falls, as a matter of law, within the particular class for which the law grants a remedy for the particular harm alleged. La. C.C.P. art. 927(A)(5); Stafford Constr. Co., Inc. v. Terrebonne Parish Sch. Bd., 612 So.2d 847, 851 (La.App. 1st Cir.1992), writ denied, 614 So.2d 82 (La.1993). This objection is a threshold device to terminate a suit brought by one who has no interest in enforcing judicially the right asserted. Stafford, 612 So.2d at 851.
Evidence supporting or controverting the exception is admissible, but the objection of no right of action cannot be used simply because there may be a valid defense to the proceeding. Brown v. Assoc. Ins. Consultants, Inc., 97-1396, p. 4(La.App. 1st Cir.6/29/98), 714 So.2d 939, 941. To prevail, the defendant must show that the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit. Falco Lime, Inc. v. Plaquemine Contracting Co., Inc., 95-1784, p. 5 (La.App. 1st Cir.4/4/96), 672 So.2d 356, 359.
The Commissioner suggests that if there were a valid claim arising out of the liquidation of the M-Tel securitiesan allegation that he vehemently deniesany such debt would be owed to the liquidated estate for the benefit of policyholders and creditors. He maintains that even if this court believes that the owner of an insurance company is vested with a right of action, Barbara Presley has failed to establish an ownership interest in the companies in liquidation either in her own right or as the succession representative of Sam Presley, Jr. Insofar as her capacity as a succession representative, the Commissioner alleges that Sam Presley, Jr. forfeited any interest in ANA, USGA, and AFSI as a condition to his plea bargain in his federal criminal case. Thus, Barbara Presley should not be allowed to assert an ownership interest on behalf of her late husband. And with respect to her individual claim, the Commissioner points out that Barbara Presley never owned an interest in USGA and any purported interest in ANA was a mere sham, which is evidenced by Sam Presley, Jr.'s judicial admission.
The question of whether Barbara Presley is vested with a right of action requires an analysis of the Commissioner's role under the Louisiana Insurance Code and the effect of the single business enterprise designation in this litigation. Under the statutory scheme, the commissioner of insurance and his successors in office shall be vested by operation of law with title to all property, contracts, and rights of action of the insurer as of the date of the order directing rehabilitation or liquidation. La. R.S. 22:735(A). Once an order of liquidation is entered, the commissioner of insurance shall immediately proceed to liquidate the property, business and affairs of the insurer. La. R.S. 22:737(A). He is authorized to deal with the property and business of the insurer in his name as commissioner of insurance, or, if the court shall so order, in the name of the insurer. Id. He may, subject to the approval of the court, sell or otherwise dispose of the real and personal property, or any part thereof, and sell or compromise all doubtful or uncollectible debts or claims owed to or by the insurer. La. R.S. 22:736(B).
The commissioner of insurance has the duty to preserve so far as possible the right and interest of the policyholders and other creditors of the insurer. La. R.S. 22:737(D). While acting as liquidator, the commissioner of insurance is a fiduciary holding the assets of the insurer for the benefit of parties in varied legal relationships *911 to the insurer. See Crist v. Benton Casing Serv., 572 So.2d 99, 101 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1143 (La.1991).
The fiduciary duty of the commissioner of insurance is sometimes expanded in cases where the insolvent insurer is part of a larger business conglomerate. For example, when a group of associated business entities or corporations integrate their resources to achieve a common business purpose and do not abide by the formalities of law for operation as separate companies, a single business enterprise may be declared. See Brown v. Auto. Cas. Ins. Co., 93-2169, p. 6 (La.App. 1st Cir.10/7/94), 644 So.2d 723, 727, writ denied, 94-2748 (La.1/6/95), 648 So.2d 932; see also Green v. Champion Ins. Co., 577 So.2d 249, 257-259 (La.App. 1st Cir.), writ denied, 580 So.2d 668 (La.1991). Upon finding that a group of affiliated corporations constitute a "single business enterprise," the court may disregard the concept of corporate separateness among the affiliated corporations to prevent fraud or to achieve equity. Id. The commissioner of insurance may then pool the assets of each of the affiliated companies together for use in liquidation and to satisfy the claims of creditors. Id. In that unique circumstance, the commissioner of insurance owes a fiduciary duty not only to the creditors of the insolvent insurer but also to the various creditors of its affiliated entities.
In this case, once the trial court rendered judgment on October 8, 1993, recognizing ANA, USGA, and AFSI as a single business enterprise, the separate identities of the businesses were lost insofar as the Commissioner was concerned. At that time, the assets of the individual companies were merged and vested in the Commissioner for appropriate management and distribution. Thus, in his role as liquidator, the Commissioner owed a fiduciary duty to all of the owners or members of the single business enterprise who formerly held the assets.
Although on appeal the Commissioner has attempted to characterize the reconventional demand as an objection to the improper sale of USGA-owned M-Tel securities, it is in actuality a right of action for breach of the Commissioner's fiduciary duty. Once the trial court rendered a judgment recognizing ANA, USGA, and AFSI as a single business enterprise, title to all property, contracts, and rights of action of the business entities participating in the single business enterprise were vested in the Commissioner. At that time, Barbara Presley, as an owner of ANA, acquired a right of action resulting from a breach of the fiduciary duty owed to any owner or member of the single business enterprise who formerly held the assets. And because USGA was included in the liquidation order, all of its assets were vested in the Commissioner. Therefore, the right of action for breach of the fiduciary duty arising from the Commissioner's duty to liquidate and distribute the assets of the single business entity cannot be asserted by the Commissioner on behalf of or against the liquidated estate; rather that right of action belongs to the owners and/or members of the companies to whom the duty is owed. To the extent that Barbara Presley was the owner of record of ANA, and USGA has been judicially recognized as an affiliated entity of ANA, she is, in her own right, a proper party to assert a claim against the Commissioner for breach of fiduciary duty arising out of the liquidation of USGA and the mismanagement of the assets of the single business enterprise.
*912 In reaching our conclusion that Barbara Presley has a right of action, we distinguish the cases of Bernard v. Fireside Commercial Life Ins. Co., 633 So.2d 177 (La.App. 1st Cir.1993), writ denied, 93-3170 (La.3/11/94), 634 So.2d 839, and Brown v. Assoc. Ins. Consultants, Inc., 97-1396 (La.App. 1st Cir.6/29/98), 714 So.2d 939, previously decided by this court. In Bernard, the Federal Deposit Insurance Corporation (FDIC), in its capacity as the successor to a creditor of an insolvent insurance company in rehabilitation, brought an action to set aside alleged preferential transfers of the insolvent insurer's assets to another insurer that had agreed to provide reinsurance on the insolvent insurer's contracts pursuant to a court-approved rehabilitation plan. On appeal following the rendition of partial judgment in favor of FDIC, this court considered whether FDIC had a right of action to assert claims against the reinsurer. In support of its position that it had a right to attack the transfer of assets, FDIC relied on general principles of law relating to fiduciaries. Specifically, FDIC contended that the commissioner of insurance failed in the duty he owed to the insolvent insurer and its creditors, as their fiduciary, to enforce all causes of action belonging to the insolvent insurer and to recover property improperly transferred to the reinsurer. According to FDIC's rationale, it was entitled to seek the return of the assets in question since the commissioner of insurance failed to do so. In considering this line of argument, this court pointed out that pursuant to La. R.S. 22:735,[12] the commissioner of insurance is vested with title to all property, contracts and rights of action of the insurer as of the date of the order directing rehabilitation or liquidation. 633 So.2d at 185. Further, as rehabilitator or liquidator, this court noted that under La. C.C.P. art. 693, the commissioner of insurance is the proper party to sue to enforce any right of a domestic insurer in rehabilitation. Id. This statutory scheme, the Bernard court explained, is comprehensive and exclusive in scope, and there is no provision that allows individual creditors to assert a cause of action vested in the commissioner of insurance. Id. Thus, this court held that FDIC had no right of action to bring the claims asserted.
Similarly, in Brown, the shareholders of a single business enterprise in liquidation filed suit against the court-appointed liquidator and receiver, together with the Louisiana Receivership Office, seeking to enjoin the transfer of certain mortgage notes that had been owned by those entities. The shareholders averred that the net bid price was substantially less than the fair market value of the assets and that the sale would result in substantial losses to the single business enterprise. In response, the defendants filed various exceptions, including an exception raising the objection of no right of action, which was maintained by the trial court. On appeal, this court reasoned that the officers, directors, owners, and agents of the insurer, among others, are charged with a statutory duty pursuant to La. R.S. 22:734.1(A) to cooperate with the commissioner in a liquidation proceeding. 714 So.2d at 942. Additionally, the statute gives the court authority to issue an injunction restraining the insurer and its officers and agents from interfering with the liquidation proceedings *913 or the conduct of business by the commissioner of insurance. Id. In once again looking to the statutory scheme for liquidation of insurers, the Brown court noted that there is no place in this scheme for the entities under order of liquidation to seek to enjoin the sale of assets, approved by the court, to achieve liquidation. Id. This court concluded that a right of action does not exist in favor of the shareholders to enjoin the sale of entity assets. Id.
Unlike the petitioners in Bernard and Brown, Barbara Presley, the plaintiff-in-reconvention in this case, does not seek to enjoin the Commissioner from taking action nor does she seek to undo actions taken by the Commissioner in fulfillment of his duties as liquidator. This is not a collateral attack on the liquidation order. Instead, Presley seeks damages arising out of steps previously taken by the Commissioner that were allegedly in breach of his fiduciary duty to the owners of the single business enterprise. In this limited circumstance, the right of action does not belong to the Commissioner on behalf of the insolvent insurer but is unique to the former owners and members of the single business entity to whom the fiduciary duty is owed. Otherwise, the Commissioner would be placed in the dubious position of having to assert a claim against himself, his predecessor in title, and/or his agents for breach of fiduciary duty, a result that is absurd and one not contemplated by the Code. Under the facts at hand, we find that Barbara Presley is vested with a right of action to assert the claims in reconvention.
Failure to Join an Indispensable Party
La. C.C.P. art. 641 contemplates the joinder of persons required for a just adjudication, providing as follows:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.
The failure to join a party to an action may be raised at any time or noticed by the trial or appellate court on its own motion. La. C.C.P. arts. 645 and 927.
Because the reconventional demand is premised on the assumption that the Commissioner breached his fiduciary duty by failing to properly supervise Reichman and Bickerstaff, resulting in the loss of over $2,000,000 in the sale of USGA-owned M-Tel securities, the Attorney General suggests that had the alleged breach never occurred, the lost profit would have been realized by the ANA estate and included in the assets available for distribution to creditors. Thus, the court-appointed receiver, as representative of the ANA creditors, is an indispensable party to the litigation of the reconventional demand.
Reasoning that pursuant to La. R.S. 22:749(D),[13] the receiver is the gatekeeper *914 of the estate's assets and is granted the authority to allow or disallow claims against the estate, subject to judicial review, the Attorney General submits that a claimant's interest is only vested at such time as a proof of claim is allowed by the receiver or the court. Even then, he notes, Barbara Presley is a general creditor of the ANA estate and, at best, a priority-six claimant under the mandatory priority scheme set forth in La. R.S. 22:746.[14] If there are insufficient funds to satisfy in full all claims on a given level of priority, the comprehensive distribution scheme contemplates pro rata distribution among the claimants.[15] Thus, the sums awarded to Barbara Presley would ordinarily be paid out, along with other estate assets, to the claimants in higher priority classes first and only then to Presley to the extent of her pro rata interest as a priority six claimant. And the judgment of the trial court circumvents the comprehensive distribution scheme established by the Insurance Code, so as to allow Barbara Presley to recover to the prejudice of superior class claimants and the other general estate creditors. To prevent injustice *915 and to ensure that the collection of any judgment will be fully and properly remitted to the receivership account for distribution in accordance with the scheme set forth in La. R.S. 22:746, the Attorney General urges that the judgment of the trial court should be set aside and the matter remanded for joinder or substitution of the receiver as a plaintiff in reconvention in accordance with La. C.C.P. art. 693.[16] We disagree.
The Attorney General's position overlooks the fact that the receiver for ANA was neither an absent nor unrepresented party in the trial court proceedings. Both Shelton Dennis Blunt, counsel for the Commissioner and receiver on the main demand, and Michael Adams, the receiver for ANA, appeared before the trial court on November 5, 2003, and were present when Patrick McGrew, counsel for Barbara Presley, stipulated to the terms of the settlement of the main demand.[17] Among the conditions of the settlement, the estate obtained an interest in Barbara Presley's reconventional demand. Specifically, the parties stipulated that the estate is to be paid 1/3 of the recovery on the reconventional demand, up to the sum of $1,000,000. Thereafter, the estate is to receive 25% of the recovery after the payment of attorney fees and expenses, without limitation. Further, Adams reserved the right to pursue any additional claims that remain in the estate.
Following settlement of the main demand, trial on the merits proceeded as to the reconventional demand.[18] Following trial, on July 14, 2004, Blunt once again appeared before the trial court on behalf of the court-appointed receiver to oppose a motion for new trial filed by the Commissioner. At that time, Blunt indicated that the receiver's position was that the trial court's judgment awarding damages on the reconventional demand should be upheld. Blunt suggested that the judgment was fair and just, particularly on behalf of the policyholders and creditors of the defunct insurer who, under the terms of the settlement, stood to recover a portion of the judgment proceeds.
In this sense, the office of receivership, through Adams and Blunt, compromised their right to recovery in full on the reconventional demand. By virtue of the compromise and settlement, they assented to the prosecution of the claim by Barbara Presley on behalf of the entire estate. From that point forward, there was an identity of interest between Barbara Presley and the receiver with respect to the claims in reconvention.[19] In this context, *916 the interest of the estate was adequately represented at trial, and the assertion that the receiver is an indispensable party is without merit.
Immunity
La. R.S. 9:2798.1 shields public entities, including the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions, from liability arising out of certain official acts. The statute provides, in pertinent part:
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
The immunity provided under the statute is referred to as the discretionary acts doctrine.[20]
On appeal, the Commissioner contends that he is immune from liability under the specific facts of this case. In asserting the defense of immunity, the Commissioner claims that he is vested with discretion, pursuant to La. R.S. 22:737, to liquidate the property, business, and affairs of the insurer in any manner that he deems appropriate. Moreover, the Commissioner submits that the discretion with which he is vested is grounded in public policy, in that the goal of liquidation is to protect the interests of the insurer's policyholders, members, stockholders, creditors, and the public. Thus, the Commissioner asserts that he cannot be held liable for any actions or omissions in conjunction with a liquidation proceeding. The Commissioner submits that the statutory immunity is absolute and applies regardless of the subjective intent or motives of the individual agents or actors.
To determine whether the immunity statute is applicable under the facts and circumstances of this case, we first consider the nature and extent of the Commissioner's duty with respect to the investment advisers. Upon placing ANA in liquidation, the Commissioner owed a fiduciary duty to maximize the estate assets available for distribution to its creditors. *917 Although the Commissioner was vested with the authority to appoint agents pursuant to La. R.S. 22:743,[21] his duties as a fiduciary were not satisfied upon delegation of his duties. The act of delegating his duties included oversight and supervision of those to whom the duty was delegated to ensure compliance with the law on liquidation.
The record supports the trial court's finding that the Commissioner failed to supervise Reichman and Bickerstaff. Specifically, L.D. Barringer, the deputy receiver appointed in this case, testified that he did not know of any specific policies or procedures in effect for the supervision of investment firms and agents retained in conjunction with liquidation proceedings within the receivership office.[22] The record is devoid of any evidence rebutting Barringer's testimony or otherwise establishing that the Commissioner exercised supervision over his agents.
Because the record contains a reasonable evidentiary basis to support the trial court's finding that the Commissioner did not exercise adequate supervision and control over Reichman and Bickerstaff, it is not manifestly erroneous. And the Commissioner's failure to oversee the acts of its agents was not an omission "reasonably related to the legitimate governmental objective" of the liquidation provisions of the Insurance Code. Indeed, the Commissioner's failure to oversee his appointed agents constitutes reckless misconduct. Thus, the Commissioner's malfeasance falls within the exceptions to the immunity provisions provided in La. R.S. 9:2798.1(C)(1) and (2), and he cannot claim immunity for any damages arising out of the actions of his agents.
In reaching this conclusion, we distinguish the facts of this case from those at issue in State ex rel. Guste v. Public Investors Life Ins. Co., 866 F.Supp. 301 (W.D.La.1993), aff'd, 35 F.3d 216 (5th Cir. 1994). In Public Investors, the State of Louisiana sued a bankrupt insurance holding company, including related corporations and some of their officers and directors, for an accounting for various transactions and assets possessed by the defendants. The trustee of the holding company's chapter 7 estate asserted a counterclaim, seeking to hold the State liable for damages allegedly suffered by the holding company due to negligence by State officials and employees in performing their statutorily-required duties. In particular, the trustee alleged that unnamed officials of the Department of Insurance failed to perform their duties because they approved, or failed to prevent, certain transactions at a time they knew the holding company was insolvent, and *918 charged the State with the loss of approximately $21,000,000 from the sale of the holding company's subsidiaries, plus about $7,000,000 from a series of transactions in which the holding company and other defendants sold and resold a parcel of real estate to each other at inflated prices. In response, the State filed a motion to dismiss the trustee's counterclaim, arguing that the trustee sought to impose liability on the basis of discretionary acts for which the State is immune. Upon considering the motion to dismiss, the U.S. District Court for the Western District of Louisiana concluded that the complaint failed to allege any act that would fall outside the discretionary acts immunity of La. R.S. 9:2798.1.[23] 866 F.Supp. at 305. The court reasoned that the complaint alleged no violation of any mandatory statute, regulation, or policy. Id. In finding that the complaint arose out of a series of discretionary acts, the court rejected the trustee's argument that La. R.S. 22:733,[24] setting forth the grounds for rehabilitation, prescribes a mandatory course of action once the commissioner of insurance finds an insurer to be insolvent. Id. Moreover, the court explained that the duty of the commissioner of insurance and his subordinates is to regulate the business of insurance in the public interest. Id. Since the trustee failed to allege any facts to support a finding that the challenged actions were not the kind of conduct grounded in the policy of the regulatory regime, the court could only presume that the Department's actions were grounded in the public policy expressed in the Insurance Code. Id.
Unlike the trustee in Public Investors, Presley has specifically contended that the Commissioner breached his fiduciary duty in that he failed to oversee the agents appointed to assist in the liquidation. In this context, where lack of oversight has been alleged, it cannot be said that the Commissioner's inaction or omission was in furtherance of any valid public policy and in compliance with his duties under the Insurance Code. The Commissioner is not, therefore, shielded by the discretionary acts immunity of La. R.S. 9:2798.1.
Merits of the Reconventional Demand
Turning now to the merits of the recoventional demand, we preliminarily note that the ultimate question before us whether the Commissioner breached the fiduciary duty he owed to Barbara Presley as an owner who formerly held assets within the consolidated estateis a determination subject to the manifest error standard of review, which affords great discretion to the trier of fact. See Boykin v. Louisiana Transit Co., Inc., 96-1932, p. 11 (La.3/4/98), 707 So.2d 1225, 1231. But before that question can be answered, we must ascertain whether the Commissioner's fiduciary duty included within its scope the responsibility of overseeing his agents to ensure that they complied with the requirements of the Insurance Code, *919 which is a legal determination. See Junot v. Morgan, XXXX-XXXX, pp. 6-7 (La.App. 1st Cir.2/20/02), 818 So.2d 152, 158.
The Commissioner asserts that the limited testimony of Pat Culbertson, an expert in the field of economics retained by Barbara Presley to calculate the proceeds that would have resulted from selling the USGA owned M-Tel securities immediately upon acquisition by the ANA estate, was insufficient to establish the standard of care he owed to Barbara Presley.[25]
Pointing to the testimony of his two experts, W.O. Myrick and Walter A. Morales, the Commissioner urges that this evidence established the requisite standard of care he owed to Barbara Presley. Myrick, a former deputy commissioner over the Louisiana Office of Receivership, stated that in liquidation proceedings, it is generally inappropriate for the commissioner of insurance to immediately dump the assets of the estate on the market without the benefit of analysis and advice from outside investment professionals. The prudent course of action, Myrick explained, is for the commissioner of insurance to obtain the advice of financial investment advisers and to usually follow that advice. In his opinion, the Commissioner satisfied the standard of care by seeking out and following the advice of Reichman and Bickerstaff.
Similarly, Morales, a financial adviser and professor of finance at Louisiana State University, testified that it is prudent for the commissioner of insurance to retain investment advisers in liquidation. Moreover, Morales stated that Reichman and Bickerstaff were reasonable in recommending the programmed or staged sale of the USGA-owned M-Tel securities, so as to avoid price speculation and to assure that the estate received a price consistent with average stock value over time. Unless a commissioner of insurance is faced with a situation where the estate is in a cash crunch and has immediate debts, Morales opined, the sale of securities over time is the best option.
We believe the Commissioner acted appropriately in retaining financial advisers to assist in the liquidation of the ANA estate. Clearly, the appointment of assistants is authorized under the Insurance Code. La. R.S. 22:743. Indeed, the appointment of and reliance on the advice of financial advisers is often necessary in complex receivership proceedings to ensure that the estate realizes maximum value for its assets for the benefit of policyholders and other creditors. Such action is consistent with the underlying public policy of the Louisiana Insurance Code.
But the Commissioner's duty did not end with the appointment of financial advisers. In Edwins v. Lilly, 422 So.2d 1217 (La.App. 1st Cir.1982), writs denied, 426 So.2d 178, 180 (La.1983), an insolvent corporation brought suit against, among others, its liquidator to recover funds allegedly misappropriated during its liquidation. The plaintiff argued that the liquidator breached his fiduciary duty by failing to supervise his law partner, who was also counsel for the corporation in liquidation. In considering whether the liquidator breached his fiduciary duty, this court reasoned:

*920 The law does not permit a liquidator to stand insouciantly on the sidelines while the liquidation is being frustrated or frittered away. The liquidator must actively be involved in the administration of the trust. He is the fiduciary to the corporation in liquidation, its shareholders and its creditors. As fiduciary, his duty is of the highest obligation required by law. He must "zealously, diligently and honestly guard and champion the rights of his principal against all other persons whomsoever."
422 So.2d at 1223 (citations omitted). Because there was no evidence in Edwins that the liquidator took any steps toward actually discharging the duties of his office and the liquidator essentially let his law partner control the liquidation proceedings, this court concluded that he failed to perform the duties required of him and that he failed to prudently handle the affairs of the corporation in liquidation. Id. This court went on to reason that the liquidator's failure to supervise counsel for the corporation in liquidation was one of the primary reasons the attorney was able to so easily steal funds from the estate. Id.
We believe that upon appointment of the agents, the Commissioner's fiduciary duty included the oversight of his agents to ensure that they acted in compliance with the dictates and policy of the Insurance Code. And it is with respect to this duty to supervise his agents that we find the Commissioner failed in this liquidation proceeding.
Ample evidence was introduced at trial to support the trial court's factual finding that the Commissioner breached his duty to supervise his agents. Barringer's uncontroverted testimony was that the receivership office did not have any specific policies or procedures for supervision of investment firms and agents. And nothing in the record otherwise demonstrates that the Commissioner had in place a system that either ensured he received and reviewed regular reports on the activities of his agents or that constituted checks and balances to make certain he was apprised of his agents' actions in the execution of the duties of the office of the commissioner that he had delegated to them.
Additionally, the record contains evidence related to the convictions of Reichman and Bickerstaff for public bribery and unlawful fee splitting, respectively, including sworn admissions submitted as part of their plea agreements. In Reichman's sworn admission, he admitted that he received bribes and kickbacks from Bickerstaff that influenced his performance of duties as an agent of the Louisiana Department of Insurance. Reichman also acknowledged that in April 1995, he created a number of promissory notes in an effort to disguise the unlawful payments as loans.
Likewise, in his sworn admission, Bickerstaff stated that he was the owner of Asset Management Consultants, Inc., which received a contract from the Commissioner in October 1992 to "provide consulting expertise in Investment Portfolio Management to all Estates in the Receivership Department." Bickerstaff admitted that much of his work under the Asset Management Consultants, Inc. contract involved a review of the investment activities of his employer, Hattier, Sanford & Reynoir. Bickerstaff went on to acknowledge that Asset Management Consultants, Inc. received $221,000 to review his own performance at Hattier, Sanford & Reynoir and that this collusion was the source of the $90,000 in bribes he paid to Reichman.
Lastly, we note that the record contains the Commissioner's third-party petition filed against Reichman and Bickerstaff in May 2003, which alleges that the consolidated estate sustained damages, including *921 but not limited to payment of excessive commissions, as a result of his agents' mishandling of the ANA assets.
We reject the Commissioner's suggestion that because there was no specific admission of wrongdoing by Reichman and Bickerstaff with respect to the assets of the consolidated ANA estate, there is no evidence that the Commissioner breached his fiduciary duty. In the admissions entered in conjunction with their state criminal proceedings, Reichman and Bickerstaff admitted to mismanagement of all estates in receivership. The widespread nature of their fraud does not lessen the damages sustained in this case. To the contrary, it only strengthens our belief that the Commissioner is liable for the failure to supervise them and promptly detect their misdeeds.
The lack of supervision by the Commissionercoupled with the misdeeds of Reichman and Bickerstaffresulted in a substantial loss to the estate. The evidence shows that Reichman and Bickerstaff were able to operate with unlimited authority, thereby permitting their scheme to defraud the various receivership estates to go undetected for some time. As a result of the Commissioner's breach of fiduciary duty, the estate suffered loss of profits and paid excessive and unnecessary commissions arising out of the sale of the USGA-owned M-Tel securities. Additionally, Reichman and Bickerstaff received sums as part of a bribery scheme, all or a portion of which were derived from the ANA estate. The Commissioner's fiduciary duty included the responsibility of supervising his agents and subjecting their actions to reasonable scrutiny. And the trial court's finding that he breached that duty is not manifestly erroneous.[26]

DECREE
For all these reasons, the trial court's judgment is affirmed. Appeal costs in the amount of $6,043.04 are assessed against the Commissioner of Insurance, State of Louisiana.
AFFIRMED.
McCLENDON, J., dissents and assigns reasons.
PARRO, J., dissents and will assign reasons.
McCLENDON, J., dissents and assigns reasons.
The majority's finding that statutory immunity does not apply, because a failure to supervise is not an omission "reasonably related to a legitimate governmental objective" and because the commissioner's failure to supervise was equivalent to "reckless misconduct," is contrary to the evidence in this case. Based on the record before us on appeal, I would find that the defense of statutory immunity, provided for in LSA-R.S. 9:2798.1, applied to the commissioner. Thus, for the reasons that follow, I respectfully dissent, and would dismiss the demand.
After an insurer is ordered into liquidation by the court, LSA-R.S. 22:735 requires the commissioner to take possession and liquidate the insurer's property. Specifically, the commissioner, "and successors in office shall be vested by operation of law with the title to all property, contracts, and rights of action of the insurer as of the date of the order directing rehabilitation or liquidation." LSA-R.S. 22:735(A). As a liquidator, the commissioner has the duty "to preserve so far as *922 possible the right and interest of the policyholders of the insurer . . . and of such other creditors. . . ." LSA-R.S. 22:737 D; see LSA-R.S. 22:746. The commissioner is allowed by law to appoint another party as liquidator and to hire deputies and assistants "to assist him as he may consider wise." This is what was done by the commissioner with regard to the liquidation of ANA, USGA, and AFSI as a single business entity (SBE). LSA-R.S. 22:743 A (emphasis added); see LSA-R.S. 22:742.

STATUTORY IMMUNITY
Louisiana Revised Statutes 9:2798.1 B provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." Although the statute does not limit or define "liability" by linking it only to specific acts or breaches of duty, section C of LSA-R.S. 9:2798.1 does provide two exceptions to this broad grant of immunity for public entities, their officers, and employees. Specifically, the immunity does not apply: "(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."
In Fowler v. Roberts, 556 So.2d 1 (La. 1989) (on rehearing), a two step test was adopted to determine whether the immunity statute applies. First, a court must decide whether the action is a matter of choice. If no options are involved, or a statute or regulation specifically prescribes the course of action and there is no allowable discretion on the part of the actor, the immunity statute is not applicable. If the action involves selection of options, the court must then decide whether the choice or discretion is the kind shielded by the grant of statutory immunity, that is, a choice grounded in social, economic, or political policy. If the answer is yes, and the statutory exceptions to immunity are not found, then the immunity doctrine applies and the public entity or employee is insulated from liability. See Fowler, 556 So.2d at 15-16; Simeon v. Doe, 618 So.2d 848, 852-53 (La.1993); Thornhill v. State, Department of Transportation and Development, 95-1946, 1947, 1948, 1949 & 1950, p. 14 (La.App. 1 Cir. 6/28/96), 676 So.2d 799, 808, writs denied, 96-2014 & 96-2021 (La.11/8/96), 683 So.2d 272.
In Gregor v. Argenot Great Central Insurance Company, XXXX-XXXX, pp. 11-12 (La.5/20/03), 851 So.2d 959, 967, the supreme court revisited the test used to determine whether immunity is granted to a public entity. A majority of the court agreed that the state immunity statute, unlike the federal statute, made a distinction between policymaking and discretionary acts and was not essentially the same as the federal immunity statute. Thus, the majority held that the Fowler analysis, which focused on the policy requirement, was faulty. See Gregor, XXXX-XXXX at p. 12, 851 So.2d at 967 & 973 (includes Kimball, J., concurring in part, and dissenting in part, who agreed in her concurrence that the Fowler approach was flawed). Specifically, the state statute applies to "policymaking or discretionary acts when such acts are within the course and scope of . . . lawful powers and duties." LSA-R.S. 9:2798.1 B (Emphasis added.). The Gregor court found that the language of the statute was unambiguous and that all of its provisions must be given effect. Further, a review of the Louisiana statutory language revealed no exclusion from statutory immunity for discretionary acts *923 made on the operational level, as opposed to the ministerial or policymaking level. Gregor, XXXX-XXXX at pp. 5-12, 851 So.2d at 963-67. However, despite the criticism of Fowler, the Gregor court appeared to consider the Fowler test in its analysis. Gregor, XXXX-XXXX at p. 13, 851 So.2d at 968. Thus, it is unclear whether the correct inquiry utilizes the Fowler test or the plain language of the statute. Under our civilian principles and positive law, clear statutory language should control. LSA-C.C. arts. 2 & 9.

ANALYSIS
To determine if the immunity statute applies under the particular facts here, the panel had to initially determine if the commissioner's decisions were discretionary and within the "scope of [his] lawful powers and duties." LSA-R.S. 9:2798.1 B. In this case, the need for a determination primarily applied to the commissioner's hiring and supervision of the investment advisers, including the advisers' decision to proceed with a programmed sale of securities.
As support for her claim that the commissioner, through the liquidator and investment advisers, had a mandatory duty, rather than a discretionary duty, to sell USGA's M-Tel securities "immediately," Mrs. Presley primarily relies on LSA-R.S. 22:737 A and 739.1. However, a plain reading of LSA-R.S. 22:737 A reveals that the commissioner's duty is not to "immediately" liquidate all assets, but to "immediately proceed [or begin[1]] to liquidate the property" of the insurer. "The monies collected by the commissioner of insurance in a proceeding under this Part [governing rehabilitation, liquidation, conservation, dissolution, and administrative supervision] shall be, from time to time, deposited in one or more state or national" financial institutions. LSA-R.S. 22:739. After the assets are sold and the proceeds are deposited, LSA-R.S. 22:739.1 provides a specific listing of how the commissioner "may invest any monies held in any proceedings under this Part. . . ." Thus, neither LSA-R.S. 22:737 nor 739.1 requires or mandates an abrupt sale, within a day or a few months, of all assets held by insolvent insurers or multiple SBE companies, without any research or planning. Although Mrs. Presley's focus is only the USGA M-Tel assets, her reasoning, if accepted, would apply to all the assets held by an insurer in liquidation or an SBE. An unplanned, sudden sale of massive amounts of assets is more likely to be labeled flagrant or "reckless misconduct," than a programmed sale of assets over a reasonable period of time. Based on the inability of anyone to know the future, a sudden sale of all stock could as easily result in a sale for the lowest price of the year as opposed to the highest.
A reading of the insurance code governing liquidation evinces the legislative goal of an orderly liquidation, collection of proceeds, and payment and reimbursement to the policyholders and creditors. LSA-R.S. 22:732, et seq. The commissioner is the one tasked with the duty to liquidate the assets held by insurers that have been found to be insolvent and placed in liquidation by a court judgment. LSA-R.S. 22:737. The insurance code specifically allows the commissioner to hire assistants to guide the commissioner in his duties. LSA-R.S. 22:743. Logically, the solicitation of advice on the sale of assets, including a determination of the method of sale, would be an integral part of the liquidation *924 process. It follows that the commissioner has the discretion to hire, or contract with, investment advisers to assist in formulating a method of sale, and in the actual sale of securities or other assets held in the name of the insolvent insurer or companies comprising an SBE. This discretionary act is in contrast to the mandatory duty to proceed to liquidate the property. Thus, based on the facts of this case, I believe that the hiring of investment advisers, and accepting their decisions relating to the method and timing of the liquidation of various assets, were discretionary, within the course and scope of the commissioner's powers and duties, grounded in economic policy, and directly related to the statutory duties of the commissioner and the legislative objective. Therefore, under either the Fowler or Gregor analysis, the commissioner established the requirements of LSA-R.S. 9:2798.1 B & C(1).
Further, on the specific claim of negligent supervision, Mrs. Presley bore the burden of proof. From my review, I cannot say that the absence of formal or written procedures, without more, automatically equates to proof of negligent supervision or an intentional failure to supervise. More pointedly, even assuming the commissioner acted negligently in his supervision of the advisers, the inquiry, with regard to the first immunity exception, is not whether the commissioner performed negligently or unreasonably during every step of the exercise of a lawfully authorized discretionary act, but whether the primary action by the commissioner was a discretionary or policymaking act within his authority, and related to a legitimate governmental goal.[2]See LSA-R.S. 9:2798.1B and C(1); see also Franklin Savings Corporation v. United States, 180 F.3d 1124, 1134-37 (10th Cir.1999). If the primary act did not meet the requirements of LSA-R.S. 9:2798.1, the statute would not apply, and there would be no immunity.
In the instant case, the commissioner's primary actions were hiring seemingly knowledgeable investment professionals[3] and accepting their advice to employ a programmed sale of securities from a liquidated SBE, all within the authority granted by LSA-R.S. 22:743. Those actions are "reasonably related to legitimate governmental objective[s]" and "within the course and scope of [the commissioner's] lawful powers and duties." LSA-R.S. 9:2798.1 B and C(1). The language of LSA-R.S. 9:2798.1 is expansive, and does not contain an exclusion for particular types of negligence or breaches of fiduciary duties. The only exceptions to immunity are clearly listed in LSA-R.S. 9:2798.1 C.
As to those exceptions that would bar the grant of immunity under LSA-R.S. 9:2798.1 C(2), this particular record does not reasonably support the plaintiff-in-reconvention's *925 assertions of fraud and criminal acts by the commissioner relating to the acts at issue here,[4] nor does the record contain evidence of prior knowledge by the commissioner of any criminal activity, misdeeds, or malicious intent on the part of the advisers. The commissioner submitted evidence showing that his actions were prudent at the time and reasonably within his discretionary powers and legislative directive. He denied any fraud or criminal misconduct related to the USGA M-Tel sale, and highlighted the absence of any reference to the sale of USGA's M-Tel securities in the criminal proceedings against the advisers. Although the record contains contradictory evidence on whether the timing of the sale was negligent, it does not contain any evidence linking the fraudulent or criminal conduct of the advisers with the specific sale of USGA's M-Tel securities, or evidence of illegal proceeds from that sale to either the advisers or the commissioner. Further, the record is devoid of evidence that the commissioner had knowledge of any criminal activity by the advisers before the department personnel uncovered the advisers' misdeeds.[5] Therefore, to the extent that the majority finds that the commissioner's actions at issue here were within either exception to immunity, I respectfully disagree.[6]
PARRO, J., dissenting.
I respectfully dissent for the reasons assigned by Judge McClendon. In addition, I do not believe Mrs. Presley had a right of action against the Commissioner.
Under LSA-C.C.P. art. 927(A)(5), the peremptory exception raising the objection of no right of action tests whether the particular plaintiff falls, as a matter of law, within the particular class to which the law grants a remedy for the particular harm alleged. To prevail on the exception, the defendant must show that the plaintiff does not have an interest in the subject matter of the suit or legal capacity to proceed with the suit. Brown v. Associated Ins. Consultants, Inc., 97-1396 (La. App. 1st Cir.6/29/98), 714 So.2d 939, 941.
As liquidator of an insurance company, the Commissioner has the duty to preserve the rights and interests of the policyholders and other creditors. See LSA-R.S. 22:737(D). As of the date of the order directing rehabilitation or liquidation, the Commissioner is vested by operation of law with title to all property, contracts, and rights of action of the insurer. LSA-R.S. *926 22:735(A). When a group of business associations or corporations integrate their resources to achieve a common business purpose and do not follow the formalities of law for operation as separate companies, a single business enterprise (SBE) may be declared. Green v. Champion Ins. Co., 577 So.2d 249, 257-59 (La.App. 1st Cir.), writ denied, 580 So.2d 668 (La.1991). Following such a designation, the concept of corporate separateness may be disregarded and liability extended to each of the affiliated corporations for debts incurred in pursuit of the SBE's general business purpose. Brown v. Automotive Cas. Ins. Co., 93-2169 (La.App. 1st Cir.10/7/94), 644 So.2d 723, 727, writ denied, 94-2748 (La.1/6/95), 648 So.2d 932. The SBE designation vests the liquidator with ownership of the property belonging to all of the affiliated corporations in the SBE, for purposes of the liquidation. Id; see also LSA-R.S. 22:735. Therefore, after an order of liquidation, shareholders no longer have a right to object to a sale of assets from their corporation, despite a direct claim of waste or mismanagement. This includes shareholders of all the corporations designated as part of an SBE. See Brown v. Associated Ins. Consultants, Inc., 714 So.2d at 942.
However, in one extreme case, the supreme court found that a shareholder of a company in liquidation who incurred a personal loss as a result of a liquidator's breach of fiduciary duty in selling the assets of that company had a personal right of action to recover damages. See Noe v. Roussel, 310 So.2d 806, 820 and 823 (La. 1975). In that case, the liquidator determined the value of the assets of the corporation in liquidation without getting an independent appraisal, then sold those assets at a bargain price to another company in which he was the 99% owner. The court found that the breach of fiduciary duty was established by the liquidator's manipulation of the value and the sale of the assets for an inadequate consideration. The extent of the damages was the difference in value between the sale price and the true value of the property. Id.
In the matter before us, Mrs. Presley's reconventional demand against the Commissioner was filed in her individual capacity, alleging she personally incurred monetary losses as a result of the Commissioner's programmed sale over a period of time of USGA's M-Tel securities, rather than an immediate sale of those assets when USGA was put in liquidation as part of the SBE. She claimed that because of the timing of the sales, the securities brought less than they would have if they had been sold immediately, and that the Commissioner's failure to sell the assets immediately and/or to supervise the details of the programmed sale constituted a breach of the Commissioner's fiduciary duty to her.
The Noe case demonstrates that under certain circumstances, a shareholder may have a personal right of action for a liquidator's breach of fiduciary duty in managing the assets of a company in liquidation. However, such a right of action exists by virtue of an ownership interest in the company whose assets have been sold. In the matter before us, the securities at issue belonged to USGA. Mrs. Presley had no ownership interest in this company.
Nor did she acquire an ownership interest by virtue of the fact that USGA was part of a designated SBE that included another company, ANA, in which Mrs. Presley may have had an ownership interest. The effect of the SBE designation was simply to vest title of the assets of all the entities in the Commissioner, so those assets could be sold to satisfy the debts of the defunct insurance companies. The SBE designation changed title to the assets *927 of the corporations for purposes of the liquidation only; it did not change ownership of each affiliated corporation making up the SBE, such that ownership in one entity became ownership in all the related entities. Neither Mrs. Presley, nor the majority opinion, provided any authority for the proposition that Mrs. Presley's possible ownership interest in one entity in the SBE was somehow transformed into an ownership interest in the other included entities by virtue of the SBE designation.
Had Mrs. Presley been a policyholder or a creditor of USGA, she would have had a right of action for a share of the proceeds of the liquidation, in accord with the priorities established by the insurance code. Also, after Mr. Presley's death, had she filed a reconventional demand as the representative of his succession, she might have had a right of action to seek payments on behalf of his estate, since he had an ownership interest in USGA. However, she did not file her claim in either of those capacities, but as an individual who did not have an ownership interest in the company whose assets were involved in the allegedly mismanaged transaction.
Therefore, Mrs. Presley, in her individual capacity, does not fall within any of the particular classes to which the law grants a remedy for the harm she alleged in this case. Since she had no right of action against the Commissioner, I would dismiss her claim in its entirety.
For these reasons, I respectfully dissent.
NOTES
[1] Although James H. Brown in his former capacity as the Louisiana Commissioner of Insurance filed the original petition in this matter, and, hence, was named as defendant in the reconventional demand, the suspensive appeal was filed by "plaintiff and defendant-in-reconvention Commissioner of Insurance Robert Wooley, as successor to Commissioner of Insurance [James H.] Brown."
[2] On May 15, 1991, the partnership agreement was amended to reflect Mahana's transfer of 16.5% of his ownership interest in ANA to Barbara Presley, the actual sale having taken place on January 29, 1991.
[3] ANA also held 50,000 shares of stock in M-Tel and 100,000 units of a subordinate M-Tel debenture, which were sold in mid-1993 almost immediately upon ANA being placed in liquidation. The ANA securities are not at issue in this appeal.
[4] Some time thereafter, the Presleys' attorney advised the Commissioner that the allegations in the reconventional demand dealt, at least in part, with claims against the Commissioner for alleged loss of income due to an alleged breach of fiduciary duty by Reichman, Bickerstaff, and Hattier, Sanford & Reynoir.
[5] The defense of statutory immunity is an affirmative defense that ordinarily must be pled in the answer to the suit. See White v. City of New Orleans, 2000-2683, p. 3 (La.App. 4th Cir.1/9/01), 806 So.2d 675, 677; see also Stockstill v. C.F. Indus., Inc., 94-2072, p. 14 (La.App. 1st Cir.12/15/95), 665 So.2d 802, 810, writ denied, 96-0149 (La.3/15/96), 669 So.2d 428. Although the Commissioner did not assert the claim of immunity in his answer to the reconventional demand, the issue of his discretion in the sale of USGA's M-Tel securities was raised by the Presleys through enlargement of the pleadings after the Commissioner's answer was filed. Thus, we find no lack of notice or prejudicial error in the failure to plead the affirmative defense before the Presleys raised the issue of the M-Tel securities.
[6] The Presleys and Morris Mahana were charged by federal prosecutors with conspiracy, RICO violations, and mail and wire fraud. Sam Presley, Jr. ultimately pled guilty to several charges and served time in prison, but the criminal charges against Barbara Presley were dismissed.
[7] Also named as defendants in the third-party petition were Guthans A. "Gus" Reynoir and ABC Insurance Company in its capacity as the insurer for the third-party defendants.
[8] On September 28, 1995, the East Baton Rouge Parish District Attorney charged both Reichman and Bickerstaff. Specifically, Reichman was charged with public bribery. The bill of information charged that between December 1992 and March 1994, Reichman solicited and accepted over $90,000 in checks and other things of value from Richard Bickerstaff. After pleading guilty, Reichman was sentenced in January 1996 to serve eighteen months in jail concurrent with a related federal sentence for mail fraud and false representation to the Internal Revenue Service. Bickerstaff was charged by the East Baton Rouge Parish District Attorney for unlawful fee splitting. The bill of information charged that between December 1992 and February 1995, he made $90,000 in unlawful payments to Reichman. After pleading guilty, Bickerstaff was ultimately sentenced in January 1996 to serve six months in jail concurrent with a related federal sentence for misprison.
[9] Prior to trial, Sam Presley, Jr. died, and Barbara Presley was appointed to serve as the administrator of his succession.
[10] Silence in a judgment on any issue that has been placed before the court is deemed a rejection of the claim. See Caro v. Caro, 95-0173, p. 6 (La.App. 1st Cir.10/6/95), 671 So.2d 516, 520.
[11] The Commissioner also assigns as error the trial court's failure to expressly overrule the Presleys' objection to the introduction into evidence of the deposition of U.S. Attorney Peter Strasser, who testified as to the federal criminal proceedings against the Presleys. Because the parties have jointly stipulated to the inclusion of the deposition as part of the record on appeal with the notation that the testimony was "proffered/taken under advisement by the trial court," the issue is moot.
[12] The court noted that the Louisiana Insurance Code was amended and reenacted in its entirety by Acts 1991, No. 1031, effective January 1, 1993, but that the prior law was controlling. Bernard, 633 So.2d at 185 n. 9 Nevertheless, this court now notes that Acts 1992, No. 3, § 1, effective August 21, 1992, repealed Acts 1991, No. 1031 in its entirety. Consequently, the revision of Title 22 by Acts 1991, No. 1031 never became effective, and the substance of La. R.S. 22:735 as applied in Bernard has not changed.
[13] La. R.S. 22:749(D), dealing with proof and allowance of claims, provides in pertinent part:

(3) When the receiver allows or disallows a claim in a lesser amount than claimed, he shall notify the person making the claim by petition in the receivership proceedings, allowing ten days after receipt of said notice in which to file objections to the action of the receiver. The objections shall be heard in the receivership proceedings in a summary manner.....
(6) When the receiver allows or disallows a claim in a lesser amount than claimed, he shall notify the person making the claim by petition in the receivership proceedings, allowing ten days after receipt of said notice in which to file objections to the action of the receiver. The objections shall be heard in the receivership by summary proceedings.
[14] La. R.S. 22:746 sets forth the priority of distribution of general assets from the insurer's estate, as follows:

The priorities of distribution of general assets from the insurer's estate shall be as follows:
(1) The commissioner's costs and expenses of administration and the claims handling expenses of the Insurance Guaranty Association, the Louisiana Life and Health Insurance Guaranty Association, and any similar organization in another state, as provided for in R.S. 22:1385(B) and 1395.13(D)(2).
(2) Claims by policyholders, beneficiaries, and insureds arising from and within the coverage of and not in excess of the applicable limits of insurance policies and insurance contracts issued by the insurer; and liability claims against insureds which claims are within the coverage of and not in excess of the applicable limits of insurance policies and insurance contracts issued by the insurer; and claims of the Insurance Guaranty Association, the Louisiana Life and Health Guaranty Association, and any similar organization in another state, as provided for in R.S. 22:1385(B), 1379(3), 1395.3, and 1395.13(D)(2).
(3) Claims of the federal government other than those claims in Paragraph (2) of this Section.
(4) Compensation actually owing to employees other than officers of an insurer, for services rendered within three months prior to the commencement of a proceeding against the insurer under this Part, but not exceeding two thousand five hundred dollars for such employee, shall be paid prior to the payment of any other debt or claim and in the discretion of the commissioner of insurance may be paid as soon as practicable after the proceeding has commenced; except, that at all times the commissioner of insurance shall reserve such funds as will in his opinion be sufficient for the payment of all claims in Paragraphs (1), (2), and (3). This priority shall be in lieu of any other similar priority which may be authorized by law as to wages or compensation of such employees.
(5) Claims under nonassessable policies for unearned premiums or other premium refunds and claims of general creditors, including claims of ceding and assuming companies in their capacity as such.
(6) All other claims.
[15] See In the Matter of First Columbia Life Ins. Co., 97-1083, pp. 7-8 (La.App. 1st Cir.9/29/98), 724 So.2d 790, 795, writ not considered, 98-2789 (La.1/8/99), 734 So.2d 1222.
[16] La. C.C.P. art. 693 provides that "[t]he receiver appointed by a court of this state for a domestic insurer is the proper plaintiff to sue to enforce a right of the domestic insurer, or of its receiver." As used in that article, the term "receiver" includes "liquidator, rehabilitator, and conservator."
[17] The Commissioner agreed to dismiss the main demand against the Presleys, with prejudice. And in exchange, Barbara Presley agreed to limit her claim in reconvention against the Commissioner to the sale of USGA's M-Tel securities.
[18] On the main demand, attorney Shelton Dennis Blunt represented the Commissioner. However, with respect to the reconventional demand, attorneys Brace B. Godfrey, Jr., Donald C. Massey, and Amy C. Lambert of the law firm of Adams & Reese, LLP, represented the Commissioner. Thus, once Blunt made an appearance on behalf of the estate and stipulated to the terms of the settlement of the main demand, the Adams & Reese attorneys took over the representation of the Commissioner to defend against the reconventional demand.
[19] Upon the filing of the reconventional demand, the Commissioner, a state officer, was cast in the role of a defendant in a suit alleging his liability for damages. The naming of the Commissioner as a defendant in reconvention triggered the indemnification provisions of La. R.S. 13:5108.1, making the Office of Risk Managementnot the ANA estate the ultimate payee of any adverse judgment. Thus, although the interests of the Commissioner and receiver were aligned on the main demand, their interests were bifurcated on the reconventional demand.
[20] The Louisiana Supreme Court has on at least two occasions considered the application of the discretionary acts doctrine. See Fowler v. Roberts, 556 So.2d 1 (La.1989); see also Gregor v. Argenot Great Cent. Ins. Co., XXXX-XXXX (La.5/20/03), 851 So.2d 959. It is somewhat unclear under the current body of jurisprudence whether the correct inquiry utilizes the two-step test used in cases arising under the Federal Tort Claims Act as adopted by the Louisiana Supreme Court in Fowler, the plain language of the statute, or a hybrid combination of both. However, because we believe that the acts or omissions at issue fall within the express exceptions to statutory immunity, resolution of that issue is not necessary in this case.
[21] La. R.S. 22:743(A) provides:

For the purpose of this Part, and in connection with proceedings involving only domestic insurers, the commissioner of insurance shall have the power to appoint one or more special deputies as his agent or agents and to employ such clerks, or assistants as may by him be deemed necessary, and to give each of such persons such powers to assist him as he may consider wise. The compensation of every such special deputy, agent, clerk, or assistant shall be fixed, and all expenses of taking possession of the property of the insurer and the administration thereof shall be approved, by the commissioner of insurance, all subject to the approval of the court, and shall be paid out of the funds or assets of the insurer.
[22] According to Barringer's testimony, the only manual in use by the Commissioner's office was a National Association of Insurance Commissioners (NAIC) manual. He testified that the NAIC manual was very specific and related to liquidations and, more specifically, receiverships. The NAIC manual did not provide guidelines for oversight of agents retained by the Commissioner.
[23] The federal district court in Public Investors applied the test for discretionary immunity adopted by the Louisiana Supreme Court in Fowler v. Roberts, 556 So.2d 1 (La.1989).
[24] Louisiana Revised Statute 22:733 provides that whenever one of sixteen circumstances exist as to the solvency of a domestic insurer, the commissioner of insurance may apply by petition to the district court of the parish in which said insurer has its principal office, or to the district court of the parish of East Baton Rouge, or to any one of the judges thereof should the court be in vacation, at the commissioner of insurance's sole option, for a rule to show cause why an order to rehabilitate, conserve, liquidate, or dissolve such insurer should not be entered, and for such other relief as the nature of the case and the interest of the insurer's policyholders, members, stockholders, creditors, or the public may require.
[25] Culbertson attested to the fact that on October 18, 1993, the date of acquisition of the USGA-owned M-Tel securities for liquidation, the securities were worth $5,582,500. Upon acquisition, Reichman and Bickerstaff converted the debenture into an additional 100,000 shares of M-Tel stock. The securities were then sold over a twenty-month period of time ending in June 1995. Since the total amount realized from the sale of the securities was $3,088,236, Culbertson testified that there was a direct loss of $2,494,264.
[26] Because Barbara Presley did not answer the appeal, the issue of quantum is not before us.
[1] Proceed is generally defined as "come forth" or "begin." Webster's Third New International Dictionary 1807 (1976).
[2] The majority ignores the primary act of seeking professional advice as the basis for the inquiry into whether immunity applied. Instead, the majority attempts to shift the focus to a subset of the commissioner's overall management responsibilities: supervision of consultants and professional employees. Adoption of that reasoning would require the heads of the executive branch departments to micromanage all such advisers, for example, a professional law firm, or risk being stripped of immunity based on a failure to supervise the writing of every legal brief or every legal maneuver. I also note that Mrs. Presley did not claim damages based on a general failure to supervise the advisers, but rather on a claim that the sale of the M-Tel securities for a lower price resulted from specific lapses in supervision, i.e., the commissioner's failure to overrule the recommended programmed sale and require an immediate sale. The record does not support recovery under that theory.
[3] The record is devoid of any proof that the commissioner had prior knowledge that the advisers might engage in misconduct.
[4] Although the commissioner filed a third party demand alleging breaches of duty and contract by Mr. Bickerstaff and Mr. Reichman in their handling of the assets of ANA, USGA, and AFSI, including a belief that the men "may" have profited from their improper handling of the ANA estate, such allegations in a different civil demand are not sufficient proof of criminal activity by the commissioner or intentional or reckless misconduct in the hiring or supervising of the advisers. Further, said third party demand allegations do nothing to establish that the commissioner was "reckless" in failing to discover the alleged activities sooner. As the parties agree that the only remaining case is the reconventional demand filed by the Presleys, the third party demand was presumably part of the settlement agreement.
[5] After the M-Tel securities sale, it was department of insurance personnel that discovered the criminal misconduct perpetrated by the advisers.
[6] I also note that, even if one assumes that statutory immunity does not apply to the breach of a fiduciary duty and the commissioner in fact breached such a duty, the duty owed should not be to Mrs. Presley individually, but to the policyholders and creditors of the SBE entities. This is supported by the majority's own finding that the commissioner's alleged breach of his fiduciary duty resulted in a substantial loss to the "estate," not to just one individual.